H. O. POTTER, Appellee, v. H. W. POTTER et al., Appellants.

DEEDS: Delivery Presumed from Possession. *Possession* by a grantee, prior to and subsequent to grantor's death, of an unqualified conveyance of property to grantee, creates a presumption of proper and legal *delivery*, with consequent burden of proof on him to allege the contrary.

*Appeal from Chickasaw District Court.*—W. J. SPRINGER, Judge.

FEBRUARY 19, 1919.

ACTION in equity to cancel certain deeds and a bill of sale on the ground that there was no delivery made during the lifetime of the grantor. Decree was entered for the plaintiff. Defendants appeal.—*Reversed and remanded.*

*Mears & Lovejoy* and *Dawson & Wehrmacher,* for appellants.

*W. H. Scott* and *Smith & O'Connor,* for appellee.

GAYNOR, J.—On and prior to the 3d day of March, 1913, one Marvin Potter was the owner of a certain 80 acres of land in Swift County, Minnesota, and certain lots in the town of Nashua, Chickasaw County, Iowa. He was also the owner of certain personal property. He was a widower, and had two adult sons, H. O. Potter, plaintiff, and H. W. Potter, defendant.

On the 17th day of January, 1913, Marvin caused to be prepared a deed to the Minnesota land which recites:

"In consideration of the sum of one dollar and other valuable considerations, in hand paid by said H. W. Potter (defendant), of Chickasaw County, state of Iowa, do hereby sell and convey to the said H. W. Potter, and to his heirs and assigns the following described premises, to wit, forever all that tract or parcel of land lying and being in the county of Swift and state of Minnesota (describing it), and I do hereby covenant with the said H. W. Potter that I am lawfully seized in fee simple of said premises, that they are free from incumbrance; that I have good, right and lawful authority to sell the same; and I do covenant to warrant and defend the said premises and appurtenances thereunto belonging against the lawful claims of all persons whomsoever."

On the same day, he caused to be prepared a deed to the property in Nashua, the deed stating:

"I, Marvin Potter, in consideration of the sum of one dollar and other valuable considerations, in hand paid by H. W. Potter  *  *  *  do hereby sell and convey unto the said H. W. Potter and to his heirs and assigns, the following described premises,"—being the lots hereinbefore described, and with the same covenants of warranty contained in the deed to the Minnesota land. These deeds were duly signed and acknowledged by Marvin on that day, but retained in his possession until the 3d day of March, 1913.

On this day, he caused to be prepared a bill of sale, in substantially the following words:

"I, Marvin Potter,  *  *  *  for the sum of one dollar and other valuable considerations, have this day sold and to be delivered after my decease, unto my son, his heirs or assigns, H. W. Potter,  *  *  *  all my chattels, moneys, bonds and mortgages, and all household goods, also books and pictures, also all money and notes that may be due me at the time of my decease, the same being sold to the said H. W. Potter for value received, and to have and to hold the said goods, chattels, bonds, mortgages and property by the said H. W. Potter, against all other claims howsoever, and I, the said Marvin Potter, claim that I am the lawful owner of all goods and chattels and property herein mentioned."

This bill of sale was also duly signed, executed, and acknowledged by the said Marvin Potter. All these instruments were prepared by one F. R. Shope, an old friend of Marvin Potter's. The deeds were in the possession of Marvin Potter on the 3d day of March, 1913, at the time the bill of sale was executed, and were there present in the hands of Marvin Potter at that time.

At the time the bill of sale was executed, **Marvin Potter**

also caused a note to be prepared by his friend, Shope, for $600, payable to his other son, the plaintiff in this suit, with the provision that it should not draw interest until the death of Marvin Potter, and should not become due until five years after the death of Marvin Potter. A mortgage was prepared, covering the land in Minnesota, and running to H. O. Potter. After all these instruments were completed, they were placed in an envelope, in the presence of Mr. Shope, or by Mr. Shope, at the direction of Marvin Potter. Mr. Shope wrote on the envelope the following words: "To H. W. Potter." After all this had been done, Marvin Potter handed the defendant the envelope containing the papers, and said—calling him by his first name:

"Here are your papers. Take them and put them in the bank. Keep them there with your other papers. Don't put them on record until after I am gone."

These papers were prepared in Marvin Potter's house. H. W. Potter, the defendant, and his wife were present at the time. Both had been staying with Marvin for some time before these instruments were executed. It appears that, after these papers were handed to the defendant H. W. Potter, he took them and deposited them in a bank, in which he had kept papers for some eight or nine years. It may be, and probably is, true that his father kept papers at the same place in which these papers were deposited; but it is also true that the defendant had used this same receptacle for the deposit of his own papers. How long they remained there in the bank does not definitely appear. They were taken from the bank, and were in the possession of the defendant at the time his father died. The defendant testifies:

"These papers were kept at the bank. They were not in the bank at the time of my father's death; neither were the deeds nor the bill of sale. They were in my box. I had them down at my house."

Marvin Potter died on Saturday, the 9th day of March, 1916. On the Monday following, the deeds and bill of sale were placed on record. After the father's death, the defendant mailed the note for $600, with the mortgage that secured it, to his brother, the plaintiff. The plaintiff refused to accept them.

This action is brought by the plaintiff, the other brother, to cancel these deeds and bill of sale, on the ground that they were never delivered to the defendant during the life of Marvin Potter, and to have the property conveyed by the instruments declared intestate property. Issue being joined, a trial was had to the court, and a decree entered for the plaintiff, substantially as prayed. From this decree the defendants appeal.

The question for our determination is practically a fact question. The law questions relate only to the sufficiency of the facts proven to constitute a valid delivery, vesting title in the defendant.

There is a controversy touching what was said at the time these papers were delivered by Marvin to the defendant. There is no controversy as to the manual delivery of the papers in question to the defendant. Shope testified first that, when Marvin Potter handed the papers to his son, the defendant, he said, calling him by name:

"Here are your papers. Take them and put them in the bank. Keep them there with your papers. Don't put them on record until after I am gone."

On cross-examination, he testified that the father said, at the time he handed the papers to the defendant:

"Here are your papers. Take them and put them in the bank with your other papers. Don't put them on record until after I am gone."

Again, on cross-examination, he said that Marvin said to his son:

"Here are the papers. Put them in the bank and keep them there until after I am gone."

On being recalled for further examination, he testified that Marvin Potter took the papers and the envelope and handed them to his son, the defendant, and said, "Here," calling him by name, "are your papers. Put them in the bank until after I am gone."

Mr. Getsch, president of the Commercial Savings Bank of Nashua, testified that he had a conversation with the defendant, a few days after his father died, concerning a certificate of deposit; that defendant came to the bank, and wanted to know if he could get the money on the certificate. The witness asked the defendant what his authority was for drawing the money. It does not appear whether the defendant had the certificate with him at that time or not. A few days, or possibly a couple of weeks, after that, and after the certificate became due, he had another conversation with the defendant, concerning the payment of the certificate. Defendant came with his wife to the bank, and wanted to draw the money; showed a bill of sale as his authority for drawing it. (This is the bill of sale in question.) The witness told the defendant that he would have to consult authority, before he could get it on the bill of sale. He called in Mr. Scott, who, before that time, had been counselled by the plaintiff, touching defendant's right to the money. Mr. Scott was called in. A conversation took place. Scott interrogated the defendant. The witness relates the conversation touching this matter as follows: That, when Mr. Scott asked the defendant whether there was a proper delivery of the bill of sale, the defendant made no inquiry as to what would be considered a proper delivery. The only reply he made was that he got the papers out of the tin box at the bank. Witness thought he said he kept his own papers; that both he and his father had papers in that box. He said his father told him to put

that,—those papers,—some papers,—he mentioned some deeds, and, witness thought, a mortgage,—and he said those papers were to be placed in his box, and not used until after his death.

Scott testified that, in. this conversation, defendant said, in substance, that his father had told him to put those papers in the bank and leave them there until after his death; that he didn't recall whether defendant said his father handed him the papers at the time he told him to put them in the bank. He said his father gave the papers to him for the purpose of putting them in the bank. He said, in substance, that his father had given or handed him these papers, and told him to put them in the bank. The defendant told him, at the time, that his father had given him, or handed him, these papers, and told him to. put them in the bank.

Mrs. Potter, defendant's wife, testified that, when the papers were handed by Marvin to the defendant, Marvin said:

" 'Here are your papers. Now put them in the bank and take care of them.' My husband took the papers."

This fragmentary testimony, torn from the pages of memory, is all the verbal testimony tending to prove or disprove the delivery of these instruments by Marvin to the defendant before his death. Marvin is dead, and the defendant is prohibited, under Section 4604 of the Code, from testifying. We turn, therefore, to the circumstances for further light.

The intention of Marvin is made manifest in the wording of the instruments—the intention to give his entire estate to the defendant. Every expression used by him in the instruments themselves indicates and emphasizes this purpose. The only controversy that can arise is as to whether or not this purpose, so made manifest, was consummated in his lifetime. The deeds themselves were evidence of a

purpose on the part of Marvin to pass the title to his son at some time. There is nothing in the deed that suggests any intent on the part of Marvin that the deeds should not take effect immediately upon their delivery to the defendant. The instruments themselves express a clear and unequivocal intent to pass the title to the grantor therein named, without any reservation of rights in the thing conveyed. That the instruments passed into the actual physical possession of the grantee named in the instruments on the 3d day of March, 1913, is undisputed. That they were **in the actual physical possession of the grantee therein named, the defendant in this suit, before the grantor's death,** is undisputed. By whose authority they came again into the physical possession of the defendant, this record does not disclose. The only one who could speak upon this question stands within the inhibition of Section 4604. No witness testifies that this instrument was not always in the actual physical possession of the defendant, except such time as defendant had it on deposit in the bank. No one testifies directly that Marvin ever claimed or asserted or suggested any right in him to repossess these papers. At the time they were delivered, nothing was said that indicated a purpose on his part that they should be held subject to his control or direction. It goes without saying that, if the papers were delivered to the defendant, with instructions to deposit them in the vault or any receptacle for the use and benefit of Marvin Potter, the mere act of handing the papers, with such instructions, would not be a delivery sufficient to carry title. Here, however, we have an actual delivery of the instruments, duly executed, on their face passing absolute title, with no claim or right asserted then or afterwards, to the instruments, on the part of the grantor. The mere fact that the grantor **might regain** possession does not destroy the efficacy of the delivery as carrying title. *Albrecht v. Albrecht,* 121 Iowa 521; *White*

*v. Watts,* 118 Iowa 549; *Trask v. Trask,* 90 Iowa 318; *Newton & Seeley v. Bealer,* 41 Iowa 334.

The recording of a deed is not essential to passing title. The only restriction placed upon the rights of the grantee named in the deed, at the time of its manual delivery, was that it should not be recorded. The mere fact that the grantor retains possession of the thing conveyed, is only a circumstance to be considered in determining whether there was a completed conveyance. Where it is shown that the instrument conveys an absolute title, was actually delivered during the life of the grantor, the mere fact that the grantor remains in possession, but makes no claim to the property, does not destroy the legal efficacy of the instrument, or its legal effect. There is no substantive evidence that, after this physical delivery of these instruments, they were ever again in the possession of Marvin, or that he ever claimed a right to their possession. How long they were in the bank does not appear. By whose authority they were removed from the bank, does not appear. They were in the possession of the defendant at the grantor's death. This is not controverted. The presumption of a regular and proper and legal delivery must obtain, and the one alleging the contrary has the burden of proving, by clear and satisfactory evidence, that it was not delivered. *Corbin v. McAllister,* 144 Iowa 71; *Nowlen v. Nowlen,* 122 Iowa 541; *Hild v. Hild,* 129 Iowa 649.

While we might well hold that there was a valid delivery of the instruments in question on the testimony of Mr. Shope alone,—for there is no satisfactory evidence disputing what he says,—we can safely rest our holding on the proposition that the finding of the deed in the possession of the defendant after the death of his father, is a fact so strongly indicating a delivery before the death that, in the absence of any clear evidence overcoming the presumption that arises from possession, we must hold the delivery

to have been complete during the lifetime of the deceased.

For this reason, the case is reversed and remanded for a decree in accordance with this opinion.—*Reversed and remanded.*

LADD, C. J., SALINGER and STEVENS, JJ., concur.