EQUITY ASSOCIATES, INC., *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF NORTHBROOK *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 87—1782

Opinion filed May 25, 1988.

Schain, Firsel, Brown & Burney, Ltd., of Chicago (Thomas R. Burney, Robert W. Fioretti, and Matthew M. Klein, of counsel), for appellants.

Clifford L. Weaver, Steven M. Elrod, Mark E. Burkland, and Donald Q. Manning, all of Chicago (Burke, Bosselman & Weaver, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Equity Associates, Inc., Edward Schwartz, and La Salle National Bank, not personally but as trustee under trust No. 53082, appeal the dismissal by the circuit court of Cook County of their complaint against defendants, the Village of Northbrook and several individual officers or members of its board of trustees, pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615).

Plaintiffs' complaint, alleging various State and Federal causes of action, stemmed from defendants' prosecution of a lawsuit against plaintiffs and the County of Cook wherein defendants sought to enjoin the issuance of a county building permit to plaintiffs for construction of two 10-story office buildings on real estate adjacent to the village. Defendants alleged that the county zoning ordinance applicable to the property was invalid insofar as it permitted the construction of any building taller than 65 feet on the property and the construction of the two buildings proposed by plaintiffs, which were to exceed that height.

This court previously ruled, *inter alia*, that defendants' complaint adequately alleged injury to the village in its corporate capacity due to the proposed construction of plaintiffs' buildings based on the test for standing established in *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 410 N.E.2d 37, *cert. denied* (1981), 449 U.S. 1126, 67 L. Ed. 2d 112, 101 S. Ct. 943. (*Village of Northbrook v. County of Cook* (1984), 126 Ill. App. 3d 145, 147, 466 N.E.2d 1215.) In *Barrington Hills*, our supreme court conditioned a municipality's standing to challenge the zoning laws of any governmental unit "upon a clear demonstration that it would be substantially, directly and adversely affected in its corporate capacity." (*Bar-*

*rington Hills*, 81 Ill. 2d at 398.) After a bench trial upon remand, the circuit court granted the defendants, *i.e.*, plaintiffs here, a directed judgment.

Thereafter plaintiffs filed the subject six-count complaint. Count I alleged a claim for malicious prosecution. Count II alleged a claim for a taking and damaging of plaintiff's property for public use without just compensation as provided by law in violation of article I, section 15, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §15). Count III alleged a claim for a taking of plaintiffs' property without compensation in violation of the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV). Count IV alleged a claim for violation of the Civil Rights Act (42 U.S.C. §1983 *et seq.* (1982)). On appeal, plaintiffs contend that each of these four counts stated a cause of action.

Specifically, they assert that count I adequately alleged each of the five elements of a claim for malicious prosecution. Those elements are: (1) the institution of civil proceedings by the defendant; (2) termination thereof in the plaintiff's favor; (3) lack of probable cause for the proceeding; (4) malice on the defendant's part in bringing the action; (5) the plaintiff's arrest, the seizure of his property, or some other special injury exceeding the usual expense, annoyance and inconvenience of defending a lawsuit. (See *Bank of Lyons v. Schultz* (1980), 78 Ill. 2d 235, 239, 399 N.E.2d 1286.) After a review of the complaint, we conclude that plaintiffs failed to adequately allege any special injury inflicted upon them by defendants' prosecution of the prior lawsuit against them. As a result, we affirm the dismissal of count I of the complaint.

Paragraph 37 of count I of plaintiffs' complaint alleges the following special damages:

"(A) Loss of potential tenants ***,

(B) Loss of potential institutional lending commitments ***,

(C) Defense of an absurd and/or frivolous piece of litigation, ***, including *** attorneys fees and other costs,

(D) Damage to the reputation of [plaintiffs] as real estate developers, in the Chicagoland Metropolitan Area,

(E) Payment of real estate taxes, insurance premiums, and other similar items, reasonably required to own and maintain the Parcel between the date of the filing of the lawsuit, and the date of the entry of *** Judgment,

(F) Loss of earnings *** and appreciation upon the Complex, *** from the date *** it would have been completed, but for the intervention of the Lawsuit,

(G) An amount equal to the increment in cost to \*\*\* Plaintiffs, in construction and leaseup of the Complex, due to delays attributable to the Lawsuit."

These allegations of damage are inadequate to satisfy the special injury requirement of a cause of action for malicious prosecution. We do not believe that they allege any damage or injury "not necessarily resulting in all suits prosecuted to recover for like causes of action." *Smith v. Michigan Buggy Co.* (1898), 175 Ill. 619, 627, 51 N.E. 569.

Plaintiffs assert that defendants' interference with their property alleged in the complaint is sufficient to establish special injury and that that interference held the property in abeyance, prevented its development and rendered the property unmarketable. In support they cite *Norin v. Scheldt Manufacturing Co.* (1921), 297 Ill. 521, 130 N.E. 791, and *Lasswell v. Ehrlich* (1981), 92 Ill. App. 3d 935, 416 N.E.2d 423.

In *Norin* the issue was whether an action for malicious prosecution would lie for the prosecution of an involuntary bankruptcy petition. In the course of deciding that it would, the court noted that "[u]nder an adjudication in bankruptcy all the property of the debtor becomes subject to the control of the court, so that the defendant in such proceeding is without power to dispose of his property or to engage in business in any way." (*Norin*, 297 Ill. at 525.) The court also noted that "[a] petition in bankruptcy is *sui generis* and is most far-reaching and drastic in its effect[,]" which is to change the status of the debtor by declaring him insolvent and unable to pay his debts. (*Norin*, 297 Ill. at 525.) Finally, in reviewing Federal case law on the subject, the court noted, *inter alia*, the United States Supreme Court's description of a petition for a bankruptcy adjudication in *International Bank v. Sherman* (1880), 101 U.S. 403, 25 L. Ed. 866, "as a proceeding whereby all the property rights of the debtor \*\*\* are practically in abeyance until final adjudication, and those who deal with his property in the interval do so at their peril." (*Norin*, 297 Ill. at 526.) Based on this reasoning, the court declined to extend the prerequisite of arrest of the plaintiff or the seizure of his property to an action for malicious prosecution "beyond ordinary civil suits, to embrace those suits which are themselves unusual in their effect upon the defendant." *Norin*, 297 Ill. at 527.

The issue in *Lasswell* was whether an allegation of special injury was required to maintain an action for the malicious prosecution of a legal malpractice suit. In holding that it was, the court, *inter alia*, noted the above-quoted language from *Norin* and stated: "Clearly, although the *Norin* plaintiff's property had not been 'seized' *per se*, his

right to the free use of his own property was suspended during the pendency of the bankruptcy proceeding and, in that respect, the court considered such a proceeding was in itself unusual in its effect upon the [defendant]." (*Lasswell*, 92 Ill. App. 3d at 937.) The court concluded that a legal malpractice suit was not so unusual "in its effect upon the defendant as to warrant dispensing with the requirement of a special injury allegation." *Lasswell v. Ehrlich* (1981), 92 Ill. App. 3d 935, 937.

Plaintiffs assert that application of the *Norin* analysis yields a conclusion that a legally cognizable interference with property occurred here sufficient to establish the element of special damage necessary to plaintiffs' action. In support of that conclusion, plaintiffs cite *Bank of Lyons v. Schultz* (1980), 78 Ill. 2d 235, 399 N.E.2d 1286, which reasoned that an interference with property, as opposed to an actual seizure thereof, was sufficient to support a claim for malicious prosecution because the harm could be the same in both cases. Plaintiffs note that *Lyons* dealt with the issuance of a preliminary injunction and assert that the court held that special injury is not always dependent upon the existence of an injunction. Plaintiffs conclude that the mere filing of defendants' injunction action interfered with their property as greatly as if the injunction sought had been entered.

We disagree with plaintiffs' analysis. Plaintiffs ignore the fundamental basis of the *Norin* decision. As *Lasswell* reflects, that basis was that, while the debtor's property was not actually seized, it was effectively or constructively seized in that it was subjected to the control of the bankruptcy court until a final adjudication of the bankruptcy petition. Here, in contrast, plaintiffs' property was never subjected to the control of the court and thus neither actually nor constructively seized as a result of plaintiffs' suit. Thus, the mere fact that here, as in *Norin*, the cause of action prosecuted by defendants was not "an ordinary civil suit" is, alone, unavailing to plaintiffs.

Plaintiffs also ignore the basis of the *Lyons* decision. The *Lyons* court held that the issuance of injunctions restraining distribution of insurance proceeds to the plaintiff for up to nine years constituted interference with the plaintiff's property interests sufficient to satisfy the requirement of a seizure of property or other special injury to maintain a claim for malicious prosecution. In the course of so deciding, the court noted that *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 150, 351 N.E.2d 285, defined special injury as a deprivation of liberty or an interference with property. The court then stated: "Clearly as a result of the *** injunctions the plaintiff was prevented from using the insurance proceeds for a period of more than nine

years." (*Lyons*, 78 Ill. 2d at 240.) Significantly, the court then cited *Black v. Judelsohn* (1937), 251 App. Div. 559, 296 N.Y.S. 860, which stated:

" '*** The law is well settled that if a person brings a civil action against another maliciously and without probable cause, which terminates favorably to the defendant, and an order of arrest is procured under which the defendant is arrested, or if, *by virtue of a writ of replevin, warrant of attachment, injunction or other provisional remedy* issued therein, his person or property is taken or interfered with, the defendant may maintain an action for malicious prosecution against the plaintiff ***.' " (Emphasis added.) (*Lyons*, 78 Ill. 2d at 240-41.)

Thus, that the *Lyons* court may suggest that the existence of special injury does not always depend upon the issuance of an injunction is unavailing to plaintiffs inasmuch as the court strongly implies that it was the peculiar effect of a preliminary injunction, as a provisional remedy, upon the plaintiff's property which motivated its holding.

This result accords with that of other jurisdictions which, like Illinois, require special injury or damages for a malicious prosecution action when it is based on the prosecution of a civil suit. (See generally 54 C.J.S. 2d *Malicious Prosecution* §6 (1987).) Included in these jurisdictions, as evidenced by *Black*, is New York, in which the requirement of a showing of interference with person or property "is satisfied only if a court issues a provisional remedy, such as an attachment, an order of arrest or an injunction." (*Tedeschi v. Smith, Barney, Harris, Upsham & Co.* (S.D.N.Y. 1982), 548 F. Supp. 1172, 1174.) This we believe to be the rule in Illinois, save for the lone exception made by our supreme court in *Norin* for the prosecution of an involuntary bankruptcy proceeding.

■ Plaintiffs next contend that count II of their complaint adequately stated a cause of action for a violation of the Illinois constitutional guarantee of just compensation for the taking and damaging of private property for public use.

Plaintiffs limit their argument on appeal to the assertion that defendants' action constituted a damaging of their property rights. As such, we will limit our discussion to that issue. "Damage" to private property for public use has been defined as:

"[S]ome direct physical disturbance of a right, either public or private, which [the plaintiff] enjoys in connection with his property, and which gives to it an additional value, and *** by reason of [which] he has sustained a special damage with respect to his property in excess of that sustained by the public gener-

ally." (*Rigney v. City of Chicago* (1881), 102 Ill. 64, 81.) In view of this definition of "damage" as used in article 1, section 15, we disagree with plaintiffs that count II adequately alleged a damaging of property under the Illinois Constitution.

Plaintiffs cannot seriously contend that defendants' prosecution of the injunction action constituted or caused a direct physical disturbance of their property. Plaintiffs' arguments that defendants' actions prevented them from exercising their rights to "physically" develop or use their property miss the point. It is a physical disturbance to property, not the prevention of its physical development, which constitutes damage requiring just compensation.

■ Plaintiffs' allegation of a damaging for public use fails to state a cause of action for an even more fundamental reason. Plaintiffs compare defendants' prosecution of the underlying lawsuit to a municipality's enactment of zoning regulations. They assert that such municipal action which prevents the development of land in the absence of the necessary police power justification (see *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 342 N.E.2d 41) constitutes a taking of property under the Illinois Constitution. This comparison is unavailing to plaintiffs. The power or authority of municipalities to enact zoning regulations governing property within their corporate limits and their right to challenge the zoning ordinances of other governmental units which affect property near their borders do not have the same bases in law.

The former power is grounded on the police power to promote and protect the health, safety, morals, comfort and general welfare of the people. (*Jeisy v. City of Taylorville* (1980), 81 Ill. App. 3d 442, 401 N.E.2d 627.) The latter right, in contrast, is grounded upon a showing by a municipality that it is an aggrieved party with a real interest in the subject matter of the controversy (*City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305), *i.e.*, a clear demonstration that it would be substantially, directly, and adversely affected in its corporate capacity by the challenged zoning regulation (*Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 398, 410 N.E.2d 37). Because of the differing bases of the power of municipalities to enact zoning ordinances of their own and of their right to challenge another governmental unit's zoning decisions, they are not subject to the same test of the validity of their exercise.

The test applicable to an exercise of the zoning power is that it must bear a real and substantial relation to the public health, safety, and welfare. (*Ford City Bank & Trust Co. v. County of Kane* (1983),

114 Ill. App. 3d 940, 449 N.E.2d 577.) Moreover, while the general scheme of a zoning ordinance may be valid, it may be so arbitrary or unreasonable as applied to a particular property as to result in a confiscation of that property. *Village of La Grange v. Leitch* (1941), 377 Ill. 99, 35 N.E.2d 346.

■ In contrast, we believe that the tests applicable to a municipality's exercise of the right to challenge another governmental unit's zoning ordinances are only those generally applicable to the means by which that right is exercised, *i.e.*, those generally governing the process of adjudication of the municipality's complaint to invalidate the challenged ordinance. Of course, these tests include whether: (a) the municipality has adequately alleged standing to bring the lawsuit challenging the zoning classifications; (b) whether it has otherwise stated a valid cause of action to do so, as to which all of the requirements of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—101 *et seq.*) are applicable; and (c) whether, ultimately, it may prevail on the merits by having sustained its burden of proof, as to which all the rules governing such a decision are applicable.

Otherwise stated, the right of a municipality to challenge other than its own zoning classifications is not subject to invalidation on the grounds that it bears no substantial relation to the protection of the public weal. This we believe to be a logical and salutary result. The tests applicable to the adjudication process sufficiently protect private parties whose property may be adversely affected by invalidation of a challenged ordinance from arbitrary and capricious actions. Invalidation of the action on the grounds of an absence of a substantial relation to the general welfare is unnecessary.

In view of the foregoing, we do not believe that a municipality's invalid exercise of the zoning power and the fruitless exercise of its right to challenge a foreign zoning classification such as occurred here can or should be held to lead to the same consequences. That is, while an invalid exercise of the zoning power *vis-a-vis* a particular piece of property may result in a confiscation thereof, a fruitless, because unsuccessful, exercise of the right to challenge a foreign zoning classification of the type which occurred here cannot logically be held to do so.

■ A zoning ordinance, like all legislative enactments, must be obeyed until it is repealed by the enacting body or set aside by a court of competent jurisdiction. That the classification may work such injustice and hardship on the owner of any property subject to it while it is in full force and effect as to constitute a confiscation thereof cannot be gainsaid. In contrast, any hardship to plaintiffs here was occa-

sioned not by anything having the full force and effect of law but by their own decision to postpone construction of their buildings lest they be forced to remove them were defendants ultimately successful in challenging the county zoning ordinance and enjoining plaintiffs' construction. (See *Gulick v. Hamilton* (1919), 287 Ill. 367, 122 N.E. 537.) No legal action taken by defendants nor any remedy, provisional or permanent, obtained by them compelled plaintiffs, as a matter of law, to forego exercising their legal rights. That the exigencies of the litigation *persuaded* plaintiffs to do so did not amount to a taking of their property by defendants. The lack of any legal compulsion is fatal to plaintiffs' taking claim.

■ Plaintiffs next contend that count III of their complaint adequately stated a cause of action for a violation of the Federal Constitution's proscription against a taking of property without just compensation. (U.S. Const., amends. V, XIV.) In view of our conclusion that plaintiffs did not and cannot, under the facts of this case, state a claim under the Illinois Constitution, we must perforce conclude that they cannot state a cause of action under the United States Constitution. The guarantee of the Illinois Constitution that "private property shall not be taken or damaged for public use without just compensation" is greater than the parallel guarantee provided under the fifth and fourteenth amendments of the United States Constitution. *Citizens Utilities Co. v. Metropolitan Sanitary District* (1974), 25 Ill. App. 3d 252, 254 n.4, 322 N.E.2d 857, 860 n.4.

■ Plaintiffs lastly contend that count IV of their complaint adequately stated a cause of action for a violation of the Civil Rights Act (42 U.S.C. §1983 (1982)). However, in view of our conclusion that plaintiffs' property was not taken or damaged for public use without just compensation in violation of the United States Constitution, we must also conclude that defendants cannot state a claim under the Civil Rights Act. In the language of the Act, defendants did not subject plaintiffs to the deprivation of "any rights, privileges, or immunities" secured by the Federal Constitution and laws and thus are not liable under the Civil Rights Act to plaintiffs "in an action at law, suit in equity or other proper proceeding."

For all of the foregoing reasons, the order of the circuit court of Cook County dismissing plaintiffs' complaint in its entirety is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.