**WILLOW TREE INVESTMENTS, INC., Appellee,**

v.

**Earl F. WILHELM, Marilyn P. Wilhelm, Earl F. Wilhelm and Marilyn P. Wilhelm d/b/a Wilhelm Galaxy Homes, Appellants.**

No. 90–544.

Supreme Court of Iowa.

Feb. 20, 1991.

Diane Kutzko, Shuttleworth & Ingersoll, P.C., Cedar Rapids, and Michael J. Huberty, Dyersville, for appellants.

Chip Lowe and Michael J. Cunningham, Adams, Howe & Zoss, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The United States Court of Appeals for the Eighth Circuit has certified the following question:

> Do the periods of limitation or repose provided in Iowa Code Ann. § 614.21 (West 1950) apply so as to preclude an action between mortgagor and mortgagee to foreclose a mortgage dated more than twenty years before the commencement of the action for foreclosure, where extension agreements concerning the underlying indebtedness were executed between the mortgagor and mortgagee, but were not recorded?

When addressing a certified question, we restrict our answer to the facts provided with the certified question. *Foster v. City of Council Bluffs*, 456 N.W.2d 1, 2 (Iowa 1990). The essential facts provided with this question are set out in Division I.

I. *Background.*

Earl and Marilyn Wilhelm (Wilhelms) executed a deed of trust covering their homestead in favor of the Dyersville National Bank (bank) on July 19, 1966. The deed was security for a principal indebtedness of $13,500; it was recorded the next day. The promissory note on the debt was also dated July 19, 1966, and provided for a maturity date of July 19, 1976. The promissory note was not recorded. The deed of trust did not state a maturity date for the indebtedness, but specifically secured future debt. The Wilhelms later executed three exten-

sion agreements regarding the indebtedness. These extension agreements were not recorded. The last extension agreement postponed the maturity date of the original note until January 1, 1988. The Wilhelms also executed a series of promissory notes and deeds of trust involving nonhomestead property securing a total indebtedness of $780,599.63.

The Federal Deposit Insurance Corporation (FDIC), the successor in interest to the bank, brought an action to foreclose the deeds of trust on January 27, 1988. Willow Tree Investments, Inc. (Willow Tree) was substituted for FDIC as the real party in interest and, on September 14, 1988, sought summary judgment. The Wilhelms resisted summary judgment as to the 1966 deed of trust. They urged that Willow Tree could not foreclose on that particular deed of trust because Iowa Code section 614.21 (1987) bars foreclosure of a mortgage which is more than twenty years old unless extensions of the underlying indebtedness of the mortgagor appear of record.

The federal district court granted summary judgment for Willow Tree on June 7, 1989, finding that section 614.21 did not apply "due to the extension agreements executed by the Wilhelms." The Wilhelms then appealed to the Eighth Circuit Court of Appeals which certified the question to this court.

II. *Application of Iowa Code Section 614.21.*

Iowa Code section 614.21, in relevant part, states:

*Foreclosure of Ancient Mortgages.*

No action shall be maintained to foreclose or enforce any real estate mortgage, bond for deed, trust deed, or contract for the sale or conveyance of real estate, after twenty years from the date thereof, as shown by the record of such instrument, unless the record of such instrument shows that less than ten years have elapsed since the date of maturity of the indebtedness or part thereof, secured thereby, or since the right of action has accrued thereon, or unless the record shows an extension of the maturi-

ty of the instrument or of the debt or a part thereof, and that ten years from the expiration of the time of such extension have not yet expired.

We make no distinction in foreclosure between a deed of trust and a mortgage of real estate. Iowa Code § 654.1. Under Iowa law, a deed of trust is treated as having the same effect as a mortgage. Iowa Code § 654.2.

Willow Tree urges that the statute was not intended to operate as between the mortgagor and the mortgagee. It urges that section 614.21 was designed to protect subsequent purchasers and that its protection should not be available to mortgagors. The Wilhelms argue that the language of the statute is clear and that it makes no distinction between mortgagors and subsequent purchasers. They urge us to apply the statute as it is written.

Two separate legal principles come into play in Iowa Code section 614.21, recordation and limitation of actions. These two concepts have somewhat different aims.

The object of recording acts has been variously stated as being the original one of securing a prompt recordation of all conveyances by according priority of right to the purchaser who is first to record his conveyance, the equitable one of protecting subsequent purchasers against secret and unknown conveyances and agreements by reason of which they would otherwise be prejudiced, and the constructive one of preserving an accessible history of each title, so that anyone needing the information may reliably ascertain in whom the title is vested and the incumbrances against it.

R. Patton, *Iowa Land Title Examination* § 5, at 5–6 (1920) (footnotes omitted). Consistent with these goals, it has been stated by this court that an heir "is not a subsequent purchaser under our recording statutes, and is not protected against unrecorded deeds made by her ancestor." *McGee v. Allison*, 94 Iowa 527, 534, 63 N.W. 322, 324 (1895). Generally speaking, instruments affecting interests in real property are binding, as between the parties, regardless

of whether they have been recorded. *See, e.g., Potter v. Potter,* 185 Iowa 559, 170 N.W. 773 (1919); *Lake v. Gray,* 30 Iowa 415, 419 (1870).

■ The main purpose of statutes of limitation, on the other hand, is to "afford security against stale demands, after the true state of the transaction may, from a variety of causes be either forgotten or rendered incapable of explanation." *Penley v. Waterhouse,* 3 Iowa 418, 440 (1856). Equity aids the vigilant and not those who slumber on their rights. *Ramiller v. Ramiller,* 236 Iowa 323, 332, 18 N.W.2d 622, 626 (1945). While courts may not look with favor upon a defense of statute of limitations, it is also true that where no exception or exemption is found in the statute of limitations no such exemption or extension exists. *Rohrig v. Whitney,* 234 Iowa 435, 438, 12 N.W.2d 866, 868 (1944).

The case which is factually most similar to the question before us, and the one which we feel is controlling, is *Ramiller.* In *Ramiller,* the mortgagor was deceased, and the mortgagee was attempting to foreclose on property pursuant to an ancient mortgage. As here, the mortgage was over twenty years old, and over ten years had elapsed since the date of maturity of the indebtedness as shown by the record, although the mortgagee alleged that the mortgagor had revived the deed by means of some unrecorded writings. This court, relying on Iowa Code section 11028 (1939) (which is now codified at Iowa Code section 614.21), held that the mortgagee's action was barred by the statute of limitations. The court stated, "[i]t is not sufficient, under the provisions of this section, to establish by evidence *other than the record of the mortgage* the fact that less than ten years had elapsed since the maturity of the debt." *Ramiller,* 236 Iowa at 327, 18 N.W.2d at 624.

Thus, the only significant difference between *Ramiller* and the question before us is that in *Ramiller* the mortgagor was deceased, and his widow and heirs were claiming the protection of the statute; whereas in the instant case it is the mortgagors themselves who are claiming the benefit of the statute.

In *Ramiller* the court discussed the rationale for what is now section 614.21:

As stated, a mortgage is but an incident of a debt, and, as long as the debt survives, the remedy of foreclosure of a mortgage survives with it; at least such was the rule prior to the changes in the statute by the 31st, 34th and 35th general assemblies. The result of this rule has been that a multiplicity of actions to quiet title has been necessary, and has caused trouble and expense to real estate owners, who, in attempting to transfer real estate, found that, many years before, some mortgage had been given and now appeared of record as encumbering their property because it had not been released of record. * * * Doubtless the legislature had in mind to remedy this situation in the passage of the acts above referred to. * * * The statute in question was evidently designed *to make the record show* to all whether or not any given mortgage was valid and enforcible.

*Ramiller,* 236 Iowa at 330, 18 N.W.2d at 625 (quoting *Newgirg v. Black,* 174 Iowa 636, 643, 156 N.W. 708, 710 (1916)).

Relying on this statement of the statute's purpose, Willow Tree argues that the objectives of the statute will not be met by applying the statute in this case because there is no third-party purchaser involved. The problem with this distinction is that there were no third-party purchasers involved in *Ramiller* either.

■ "[I]n the case of a descendible interest the character of the estate held by the ancestor is the character of the estate cast upon the heir. The incident of descent works no transformation in the quality of the title." *Kalona Sav. Bank v. Eash,* 133 Iowa 190, 192, 109 N.W. 887, 888 (1906). The possession of an heir follows that of the ancestor, subject to the rights of third persons in and to the same. *Morgan v. Corbin,* 21 Iowa 117 (1866). In other words, an heir's interest in descended property is identical to the interest which was held by his ancestor.

Courts of equity are bound by statutes and follow the law in the absence of fraud or mistake. *Mensch v. Netty*, 408 N.W.2d 383, 386 (Iowa 1987). We can see no reason for distinguishing between mortgagors and the heirs of a mortgagor in the application of Iowa Code section 614.21. Although one of the purposes of section 614.21 is to avoid a multiplicity of quiet title actions upon transfer of the property to third-party purchasers, these concerns were no more present in *Ramiller* than in the instant case. This court has also stated that section 11028 (now 614.21) was enacted for the purpose of avoiding the prosecution of stale claims. *Monast v. Manley*, 228 Iowa 641, 644, 293 N.W. 12, 13 (1940). The court in *Ramiller* applied the statute as written. We could not do otherwise without effectively overturning *Ramiller*, which we decline to do. The certified question is answered in the affirmative.

CERTIFIED QUESTION ANSWERED.