William ELEY and Ruby
Eley, Appellees,

v.

PIZZA HUT OF AMERICA,
INC., Appellant.

No. 92–803.

Supreme Court of Iowa.

May 19, 1993.

Joseph R. Gunderson of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellant.

Marc A. Humphrey and James R. McCreight of Humphrey and Haas, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

LARSON, Justice.

Plaintiffs, William and Ruby Eley, live across the street from a Pizza Hut restaurant in Des Moines. On October 21, 1988, a large crowd congregated near the Pizza Hut, and a confrontation occurred between the Eleys' adult son Dennis and members of the crowd. During this confrontation, William Eley was struck on the back of the head by a rock thrown from the vicinity of the crowd.

According to the parties' statements of fact, no one could identify the thrower of the rock. Witnesses could not even state with any certainty the location from which the rock was thrown. There was speculation that it was thrown from Pizza Hut's parking lot, that it might have been from the street that separated the Pizza Hut from the Eley home, or that it might have been thrown from a vacant lot adjoining the Pizza Hut.

Eleys filed suit in the Polk County District Court against Pizza Hut, alleging William Eley's personal injuries and Ruby's loss of consortium. Pizza Hut removed the case to federal district court and then moved for summary judgment; Pizza Hut owed no duty of care to the Eleys, according to it.

The federal court, concluding that no Iowa case authority existed on the theories asserted by Eleys, certified the question of duty to this court. *See* Iowa Code § 684A.1 (1991). Because we conclude that the case is not appropriate for deciding the

issue under chapter 684A, we respectfully decline to answer the questions presented.

The order certifying the questions stated:

1. Does the occupier of a business property to which the public is invited have a duty to exercise due care to prevent injury or harm to a person who is not and has not been on that property from the criminal activities of third persons on the business property which injures the person on the adjacent property?

2. Must the specific act that causes the injury originate on the business premises, or can liability be established without proof as to the third party's location when the rock was thrown, if there is evidence that the rock came from the general vicinity of the business premises and evidence that the crowd from which the rock was thrown had originally come to the area by reason of the fact that the business premises in question had become a hang out for the post-Friday night football game activities of the students?

3. Is there a duty on the part of the operator of a legitimate business to use due care to prevent harm to persons not patrons of that business from the criminal acts of person attracted to the vicinity by that business, if the operator knows or should know from experience that such persons are likely to become unruly and commit criminal acts that could injure persons in the vicinity but not on the business premises and that the criminal conduct could be eliminated by reasonable action on the operator's part?

4. Does the occupier of a business property have a duty to exercise due care to prevent injury or harm to persons who are within the zone of danger created by the criminal conduct of high school students if such persons have not been on the business property but the occupier knows or should have known:

(1) of the problems created by high school students congregating on and near the business premises after Friday night football games for several years,

and

(2) of the criminal propensities of the students including the use of alcohol and the tendency toward fights and violence,

and

(3) that the problems had been successfully eliminated in earlier years through the use of an on-premises security guard?

Pizza Hut, which had initially raised the issue of duty, was designated as the appellant for purposes of presenting the certified questions.

Pizza Hut filed its appellant's brief and an appendix that set out many additional facts to supplement those referred to in the court's order. Some of the facts were contradicted by Eleys' statement of facts, and none of the additional facts provided by Pizza Hut's appendix were adopted by Eleys.

As a result of the failure of the order to present a clear factual picture, we do not know who threw the rock, the location from which the rock was thrown, or the involvement of Pizza Hut, particularly with respect to providing beer on the night in question. In addition, we do not know what inferences may be made from Pizza Hut's cancellation of the prior security services or what the record might establish as to Pizza Hut's alleged status as an "attractive nuisance."

It is obvious that Eleys are attempting to recover for injuries caused to a victim off of the premises by an instrumentality not under the control of defendant Pizza Hut. This would, according to the parties, require a development of new case law in Iowa. This, obviously, is the reason that the question was presented to us.

In order to succeed, Eleys attempt to expand on our existing case law regarding analogous theories. *See, e.g., Guzman v. Des Moines Hotel Partners, Ltd. Partnership,* 489 N.W.2d 7 (Iowa 1992) (liability of

premises occupier for injuries sustained on adjoining street); *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981) (liability of actor for emotional distress to person within zone of peril); *Rosenau v. City of Estherville*, 199 N.W.2d 125 (Iowa 1972) (liability of possessor of land irrespective of trespasser, licensee, or invitee status of plaintiff).

A request to expand our common law is a reasonable one. The problem we have with attempting to accommodate the parties in this case is that we do not have the specificity in the facts presented to us that we would have in the course of a normal appeal to our court. In such a case, we would have specific findings of fact, or at least a clearer factual record.

The discretion to choose a more appropriate vehicle for developing our law has been cited by one authority as a strong reason for allowing discretion on the part of the answering court to deny answers to certified questions. (Iowa Code section 684.1 provides that we "may" answer the question.) This author has stated that

[t]he court having the responsibility for the development of the law should have the opportunity to choose cases which will serve as vehicles for the presentation of necessary statements of the law.

Allan D. Vestal, *The Certified Question of Law*, 36 Iowa L.Rev. 629, 640 (1951).

Regarding the lack of specific facts, the same author noted that

[c]ertifying courts can meet this possible criticism [of inadequate factual background] by offering a complete background in the statement of facts certified. Certainly this consideration does not bar the use of certification in all cases, but at best might lead a controlling [answering] court to exercise its discretion and refuse to answer a question on occasion.

*Id.* at 646. *See generally* Note, *The Uniform Certification of Questions of Law Act*, 55 Iowa L.Rev. 465, 471–72 (1969).

The Maine Supreme Judicial Court, in a similar case, observed that:

As we construe the [certification] statute, it contemplates that our response will be "determinative of the cause"—and in fact if this were not so the statute would not satisfy constitutional requirements [of a justiciable controversy].... We cannot see that this can ever be so if the facts remain unresolved and in a hypothetical state. The Florida certification statute obviates this difficulty by permitting certification only by federal courts *at the appellate level.* At that level the facts will have been found and established. If we are to participate and yet not render purely advisory opinions, we think it will be incumbent upon us to respond to questions only when it is apparent from the certification itself that all material facts have been either agreed upon or found by the court and that the case is in such posture in all respects that our decision as to the applicable Maine law will in truth and in fact be "determinative of the cause" as the statute conferring jurisdiction upon us requires. Such is not the case here.

*In re Richards*, 223 A.2d 827, 833 (Me. 1966). The court declined to answer the certified question.

Other cases have reached similar results. *See, e.g., Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 571–72, 59 S.Ct. 657, 661, 83 L.Ed. 987, 993 (1938) ("[T]he certified questions are incapable of categorical answer and the questions which they suggest can be properly answered only by reframing the questions certified or giving qualified answers to them. This we are not required to do...."); *Western Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364, 811 P.2d 627, 630 (1991):

The second requirement, *viz.*, that the question certified be one of law, requires that the question be framed in a way that is susceptible of adjudication by way of a pronouncement as to what the law is. If particular facts are pertinent to resolution of the question, those facts must be discernible from the materials provided by the certifying court. Certification, therefore, is not appropriate if disputed facts make questions of law unclear.

(Footnote omitted) (citation omitted). *See also* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4248, at 174 (1988) ("Certification is not appropriate if there are a number of disputed factual issues making it difficult or impossible to agree on what the legal questions are.").

Because the stated facts are in conflict and could be a basis for this court to answer the certified questions in a variety of ways, we are unable to comply with the court's request. We therefore respectfully decline to answer the questions.

**ANSWERS TO CERTIFIED QUESTIONS DECLINED.**