**John C. FOLEY, Individually, and Interim Holdings, L.L.C., Plaintiffs,**

v.

**ARGOSY GAMING COMPANY, Defendant.**

No. 03–1793.

Supreme Court of Iowa.

Oct. 6, 2004.

LLP, Sioux City, and David B. Johnson and Emily A. Mily of Sidley Austin Brown & Wood LLP, Chicago, Illinois; for defendant.

Theodore Boecker and James D. Sherrets of Sherrets & Boecker, L.L.C., Omaha, Nebraska, for plaintiffs.

STREIT, Justice.

The United States District Court for the Northern District of Iowa has certified four questions to us concerning the law of malicious prosecution. After summarizing the facts and prior proceedings of the underlying dispute, we answer the federal court's questions.

## I. Facts and Prior Proceedings

We restrict our discussion to the facts provided with the certified questions.[1] *Willow Tree Invs., Inc. v. Wilhelm,* 465 N.W.2d 849, 849 (Iowa 1991); *Foster v. City of Council Bluffs,* 456 N.W.2d 1, 2 (Iowa 1990); *cf.* Iowa Code § 684A.3 (2003). In 2001, John Foley and Interim Holdings (Foley) sued Argosy Gaming Company in the Iowa District Court for Woodbury County for malicious prosecution. Foley claimed Argosy had wrongfully sued him in federal court in Illinois for alleged false statements Foley had made about Argosy. Argosy had voluntarily dismissed the Illinois suit before it came to trial.

Foley claimed that, as a result of the Illinois suit, Interim's insurance carrier declined to renew its policies and Foley lost financing on a real estate deal in Sioux City. Foley also maintained the lawsuit caused him stress, exacerbating preexist-

Maurice B. Nieland and Matthew T.E. Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser,

1. The record before us is unnecessarily voluminous. The parties have filed a two-volume appendix that contains over 1000 pages and apparently cost over $3500 to produce. It includes a whole host of information irrelevant to our proposed task—the answering of four certified questions *of law. See Wright v. Brooke Group Ltd.,* 652 N.W.2d 159, 170 n. 1 (2002) (declining to answer questions of fact or questions which involved factual determinations beyond the scope of a certified-question proceeding).

ing neck and back pain. Foley did not see a doctor, however; instead he resorted to some painkillers he owned.

■ On Argosy's motion the case was removed to federal court based on that court's diversity jurisdiction. *See* 28 U.S.C. § 1441. Argosy moved for summary judgment. *See* Fed.R.Civ.P. 56. Argosy argued Foley's complaint failed to show he suffered a "special injury." To prove malicious prosecution in Iowa, a plaintiff must show arrest of person, seizure of property, or other special injury. *See, e.g., Whalen v. Connelly,* 621 N.W.2d 681, 688 (Iowa 2000). We have defined special injury generally as an "injury that would not ordinarily result in all similar cases involving such a claim." *Id.* (citation omitted).

Instead of ruling, the federal court on its own motion stayed the federal proceedings and certified four questions to us. The four questions are:

1. Does the requirement of "special injury" to state a claim for a malicious prosecution action still remain the law of Iowa?

2. Is the non-renewal of insurance a "special injury" under Iowa law?

3. Under the facts of this case, is the loss of financing, or interference with financing, a "special injury" under Iowa law?

4. Does Plaintiff's stress, accompanied by neck and back pain, constitute "special injury" under the facts of the case?

Pursuant to our certification statute and in the exercise of our discretion, we now choose to answer these four certified questions. *See* Iowa Code § 684A.1 (stating we *may* answer a certified question where (1) it was certified by a proper court; (2) is a question of Iowa law; (3) "may be determinative of the cause ... pending in the certifying court"; and (4) it appears to the certifying court that there is no controlling Iowa precedent). *But see Eley v. Pizza Hut, Inc.,* 500 N.W.2d 61, 63–64 (Iowa 1993) (recognizing discretion and declining to answer propounded questions because the statement of facts accompanying the certification were not specific enough).

## II. The Certified Questions

### A. "Does the requirement of 'special injury' to state a claim for a malicious prosecution action still remain the law of Iowa?"

Yes. As the federal district court recognized in its order of certification,

> In this jurisdiction the rule always has been no cause of action arises from malicious prosecution unless there has been either an arrest, seizure of property, or a special injury sustained which would not necessarily result in all suits prosecuted to recover for like causes of action.

*Brody v. Ruby,* 267 N.W.2d 902, 904 (Iowa 1978). We first recognized this rule in 1884. *Wetmore v. Mellinger,* 64 Iowa 741, 744, 18 N.W. 870, 871 (1884). We have required plaintiffs in malicious prosecution cases to prove such special damages ever since. *See, e.g., Whalen,* 621 N.W.2d at 687–88; *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.,* 552 N.W.2d 639, 643 (Iowa 1996); *Royce v. Hoening,* 423 N.W.2d 198, 201 (Iowa 1988); *Brody,* 267 N.W.2d at 904; *Aalfs v. Aalfs,* 246 Iowa 158, 160–68, 66 N.W.2d 121, 122–27 (1954); *White v. Int'l Text–Book Co.,* 156 Iowa 210, 219, 136 N.W. 121, 125 (1912); *Dorr Cattle Co. v. Des Moines Nat'l Bank,* 127 Iowa 153, 158, 98 N.W. 918, 920–21 (1904); *Smith v. Hintrager,* 67 Iowa 109, 109, 24 N.W. 744, 744 (1885); *cf. Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 695 n. 1 (8th Cir.1979) ("Iowa clearly requires special damages for malicious prosecution actions."); *Hanson v. Hancock Mem'l Hosp.,*

938 F.Supp. 1419, 1447 (N.D.Iowa 1996); *Bickel v. Mackie,* 447 F.Supp. 1376, 1379 (N.D.Iowa 1978). *See generally* Mark S. Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach,* 36 Drake L.Rev. 483, 487 (1987) (acknowledging and criticizing special-injury requirement for tort of malicious prosecution). On many of these occasions—most recently less than four years ago in *Whalen*—we have explicitly declined to abandon the special-injury rule notwithstanding a stated awareness that other authority does not require it. *See, e.g., Whalen,* 621 N.W.2d at 688 ("We are aware other authority no longer requires this element.") (citing, in part, Restatement (Second) of Torts §§ 674 cmt. e, at 455, 681 cmt. d, at 470 (1977)); *Brody,* 267 N.W.2d at 905 (noting slight majority of jurisdictions did not impose the special-injury requirement but finding "no persuasive reason" to change course); *Aalfs,* 246 Iowa at 160–62, 66 N.W.2d at 122–24 (declining invitation to overrule *Wetmore* even though there was a line of authority holding otherwise); *see also Royce,* 423 N.W.2d at 201–02 (declining invitation to abandon "outdated" special-injury rule).

Following in the footsteps of those in preceding generations, Foley argues the special-injury rule is outdated and now should be abandoned. As phrased, the certified question expressly permits Foley to run this well-trod course. In our judicial system, of course, one may always question whether a precedent is controlling by asking whether it *remains* the law; it is manifest that we are free to overrule precedents when circumstances warrant. We do not "atavistically cling ... to distinctions which can have no practical significance but to interpose ancient formalities in the path of justice." Learned Hand, *The Deficiencies of Trials to Reach the Heart of the Matter,* Address Before the N.Y. City Bar Ass'n (Nov. 17, 1921), *in* 3 *Lectures on Legal Topics* 89, 93 (1926)

[hereinafter Hand Lecture] (quoted in *Engel v. C.B.S., Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626, 630 (1999)); *see, e.g., Barreca v. Nickolas,* 683 N.W.2d 111, 121–23 (Iowa 2004) (abandoning improper-purpose definition of actual malice).

■ Once again, however, we decline to abandon the special-injury rule. In the case at bar, *Whalen* clearly controls and nothing has subsequently happened—in Iowa or in other jurisdictions—to call into doubt the continued validity of our unanimous holding in that case. *Cf. Cameron v. Hardisty,* 407 N.W.2d 595, 598 (Iowa 1987) (declining to overrule prior cases in response to certified question where "no reason, factually or legally, to depart from the rule expressed in our prior decisions"). "A substantial number of courts ... [still] permit the action for wrongful civil proceedings only when the plaintiff has suffered 'special injury' or 'special grievance' as a result of the wrongful litigation." 2 Dan B. Dobbs, *The Law of Torts* § 437, at 1232 (2001 & Supp.2004); *see, e.g., Engel,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d at 629–31 (in answering certified question, "[d]ispelling rumors of the special injury requirement's demise" in New York; noting that special-injury rule is "[n]o mere ancient formalism" but rather "its justifications in American jurisprudence have continuing viability"). We also note that generally reconsideration of *stare decisis* is not a matter for us to decide via certified question. *See, e.g., Cavalli v. McMahon,* 174 Conn. 212, 384 A.2d 374, 376–77 (1978); *Cowan v. Ford Motor Co.,* 437 So.2d 46, 47 (Miss.1983); *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 677 N.Y.S.2d 764, 700 N.E.2d 303, 309 (1998); *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.,* 311 Or. 361, 811 P.2d 627, 631 (1991); *Concerned Dunes W. Residents, Inc. v. Georgia–Pacific Corp.,* 349 S.C. 251, 562 S.E.2d 633, 639 (2002); *cf.*

*Tarr v. Manchester Ins. Corp.,* 544 F.2d 14, 15 (1st Cir.1976) ("The purpose of certification is to ascertain what the state law is, not, when the state court has already said what it is, to afford a party an opportunity to persuade the court to say something else."). *But see Hartford–Carlisle Sav. Bank v. Shivers,* 566 N.W.2d 877, 879 (Iowa 1997) (where recent case had shed doubt upon "the absolute bar rule," answer to certified question necessitated).

Having answered the first certified question in the affirmative, we now turn to the three remaining questions. For the sake of simplicity, we rephrase and combine them into a single question. *Shaw v. Agri–Mark, Inc.,* 663 A.2d 464, 465 n. 1 (Del.1995).

**B. "Does the non-renewal of insurance, loss of financing, or stress constitute 'special injury' under Iowa law?"**

■ No. In applying the special-injury rule,

we have distinguished between the ordinary trouble and expense which regularly attend litigation (whether legitimately or maliciously prosecuted) and the unusual hardship arising from arrest, seizure of property or other special circumstances.

*Royce,* 423 N.W.2d at 201. On the facts of this case, non-renewal of insurance, loss of financing, and stress are more appropriately characterized as part and parcel of the ordinary trouble and expense of litigation. Not surprisingly, Foley cites no cases to the contrary;[2] a survey of our precedents and those of other jurisdictions employing the special-injury rule foreclose Foley's argument.

Those who must defend against lawsuits often incur significant costs. These costs, which regularly attend all forms of litigation, may include the non-renewal of insurance or incidental damage to business endeavors. These costs are therefore not "special injuries" for purposes of proving malicious prosecution, but rather simply part and parcel of the ordinary trouble and expense of litigation. *See, e.g., Whalen,* 621 N.W.2d at 684, 689 (litigation costs in excess of one million dollars not a "special injury"); *Royce,* 423 N.W.2d at 201 (plaintiffs' "inconvenience and expenses demonstrate no greater hardship than that suffered by any litigant in similar proceedings"); *Aalfs,* 246 Iowa at 159–60, 66 N.W.2d at 122–23 (failure to obtain credit from bank, slowdown in manufacturing, and loss of profit not special injuries).

*Aalfs* is perhaps most on point. In *Aalfs* a son claimed his father had wrongfully sued him for rescission of contract. 246 Iowa at 159, 66 N.W.2d at 122. As a result, the son alleged he suffered, *inter alia,* stress, anxiety, and loss of credit for his manufacturing operations. *Id.* at 159–60, 66 N.W.2d at 122. In determining whether the son had met the special-damages requirement, we remarked that "serious consequences to the defendant in such an action are not difficult to visualize"; such a lawsuit "will likely result in damage to the credit of the defendant, and if he be

---

**2.** Foley fails to cite a single case in support of its position on questions three and four, and only one case—a case not directly on point—is cited for its argument concerning question two. (Other cases are cited in Foley's table of authorities but we cannot find them on the pages listed.) Much of Foley's efforts appear better directed at disputing factual matters in preparation for a federal summary judgment hearing under Rule 56, as opposed to our charge, which is to answer questions of Iowa law. In our discretion, however, we decline to deem Foley's argument on these three questions waived in this case. The certifying court thought these three questions were worthy of certification, and a significant amount of time and expense has been spent on seeking our answer.

engaged in business, may well do it serious injury." *Id.* at 168, 66 N.W.2d at 127. That said, we concluded the son's alleged injuries "inhere[d] in the very nature of the action" and therefore were not "special injuries" for the purposes of malicious prosecution. *Id.*

Likewise, on the facts of this case we do not think it extraordinary that a defendant engaged in business, facing a multi-count complaint—alleging, among other things, defamation—would suffer an incidental loss of financing, or that one's insurance carrier, charged with defending against the suit, might demand higher premiums or not want to sign up for insurance again altogether. *Cf. Tarver v. Wills,* 174 Ga. App. 550, 330 S.E.2d 896, 899 (1985) (increase in insurance premiums an "unavoidable incident" of a physician's defense of a medical malpractice case); *Equity Assocs., Inc. v. Vill. of Northbrook,* 171 Ill.App.3d 115, 121 Ill.Dec. 71, 524 N.E.2d 1119, 1122 (1988) ("[l]oss of potential institutional lending commitments" not special injury); *Moiel v. Sandlin,* 571 S.W.2d 567, 571 (Tex.Civ.App.1978) (likening increase in insurance premiums to attorney fees and other common and incidental costs of litigation). *See generally* 52 Am.Jur.2d *Malicious Prosecution* § 84 (2000) ("[E]xposure to increased insurance premiums as a result of the underlying litigation do not constitute a special injury.")

Nor is defending oneself against a lawsuit a pleasurable experience. Learned Hand once remarked, "I must say that, as a litigant, I should dread a lawsuit beyond almost anything short of sickness and death." Hand Lecture at 105. The attendant stress and anxiety are thus also part and parcel of the ordinary trouble of the process, and plainly do not constitute special injury. *Royce,* 423 N.W.2d at 201 (plaintiff's "claims of reputational harm, humiliation, anxiety ... demonstrate no

greater hardship than that suffered by any litigant in similar proceedings"); *Brody,* 267 N.W.2d at 905 (mental distress not a special injury); *Aalfs,* 246 Iowa at 159–60, 168, 66 N.W.2d at 122, 127 ("great mental pain, shame, anguish and distress"); *cf. Alexander v. Alexander,* 152 N.C.App. 169, 567 S.E.2d 211, 213–14 (2002) ("[S]tress, strain and worry are experienced by all litigants to one degree or another; hence, allegations of this kind ... would not constitute special damage.").

### III. Conclusion

We decline to abandon the special-damages requirement for malicious prosecution cases. Special damages must be proved and do not include non-renewal of insurance, loss of financing, or stress.

The clerk of the supreme court is directed to send a copy of this opinion under the seal of the court to the certifying court and the parties. Iowa Code § 684A.7. The clerk shall also prepare and transmit a bill of costs to the clerk of the certifying court. Iowa R.App. P. 6.459. The clerk of the certifying court shall be responsible for apportioning and collecting costs. *Id.*

**CERTIFIED QUESTIONS ANSWERED.**

All justices concur except WIGGINS, J., who concurs specially, and CADY, J., who takes no part.

WIGGINS, J. (concurring specially).

I concur in the result, but write separately to address the reason why I concur. I do not believe it is necessary for us to decide whether we should retain the special-injury rule in order to answer the first certified question. I do not think we should be reconsidering the special-injury rule via certified question. I agree "[t]he purpose of certification is to ascertain what the state law is, not, when the state court

has already said what it is, to afford a party an opportunity to persuade the court to say something else." *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976). I would not rule out reexamining the special-injury rule after reviewing a fully developed record of a case decided by a lower court.