*198
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 The United States Court of Appeals for the Second Circuit certified the following question to this Court for resolution:
 

 “Whether an attorney, sued by his client’s adversary for the purpose of interfering with the attorney’s zealous representation of his client, and whose representation is actually undermined by the suit, may satisfy the required element of special injury in an action for malicious prosecution of a civil lawsuit under New York law where no provisional remedy is had against him.”
 

 Plaintiif, Donald Engel, an attorney who was sued by his client’s adversary, CBS, Inc., argues that New York has never required special injury as an element of a malicious prosecution cause of action. Our review of New York case law indicates otherwise, and we decline to overrule those cases that have instilled proof of special injury as a necessary component of a malicious prosecution claim. Indeed, the certified question assumes the existence of the special injury requirement and focuses on what adverse consequences resulting from a civil
 
 *199
 
 suit could amount to a special injury. We thus perceive the certified question to be asking whether New York law limits this special injury to proof that a provisional remedy was imposed in a prior civil action. Although New York cases do state that interference with person or property — the usual consequences of a provisional remedy — constitute special injury, New York law does not confine special injury to the imposition of a provisional remedy.
 

 Notwithstanding this clarification, under the specific facts given to this Court on the certified question, Engel has not shown the requisite added grievance. Engel’s allegations, as characterized by the Second Circuit, do not allow the inference that his representation of Scholz was actually undermined. Although other cases certainly may present situations where a lawyer sued will have his or her ability to represent a client sufficiently undermined to allow an inference of special injury, the factual allegations of injury here, which we are bound to accept, are not enough to constitute such special injury. Construing the question in this way, we answer the certified question in the negative.
 

 I.
 

 The history of this case reaches back to October 1983, when CBS, Inc. sued the rock group Boston and its leader Donald Thomas Scholz for breach of contract in United States District Court for the Southern District of New York. Scholz hired Engel to represent and defend him and the group against CBS’s claims. Boston and Scholz then counterclaimed for, among other things, breach of contract. During the pendency of this action, Engel successfully negotiated a contract with MCA Records on Scholz’s behalf, which provided that MCA would handle Boston’s next album. In August of 1994, CBS brought a second action again in United States District Court against MCA, Scholz, Engel and others alleging breach of contract and copyright infringement based on the MCA deal. It is this second action brought against Engel directly that forms the basis of his current malicious prosecution claim.
 

 According to the deposition testimony of its then president, CBS instituted the action against Engel, at least in part, to dissuade Engel from representing Scholz in the manner that he had been representing him up to that point. Engel, in describing the consequences, claims that the action created almost insurmountable conflicts of interest. Although Scholz agreed to continue to be represented by Engel after being
 
 *200
 
 informed, of the conflicts, Engel alleges, as set forth in the facts provided by the certified question, that rendering effective service to Scholz became more onerous and responding to discovery requests more burdensome, and that he had to absorb these costs himself. He further alleges that at least one potential client among possible others were dissuaded from hiring him, and in a general way, that he suffered emotional and financial harm tied to possible damage to his reputation.
 

 After CBS’s injunction request was denied, the court granted Engel’s motions for summary judgment, resulting in his being dismissed as a defendant from the case. The Judge considered awarding Engel attorney’s fees, stating that he was “outraged by the suggestion here contained in [CBS’s] complaint that an attorney can be effectively immobilized from representing a client by naming him as defendant,” but ultimately did not award such fees. Thereafter, the two actions brought by CBS were consolidated. Notwithstanding the purported conflicts of interest, the case proceeded to a lengthy trial, which resulted, according to Engel, in a “very, very favorable result.” Scholz won recovery of approximately $6,500,000 from CBS.
 

 After being dismissed as a defendant from the case, Engel and his law firm, Engel & Engel, commenced the current malicious prosecution action in United States District Court for the Central District of California. The Federal court in California granted CBS’s motion for summary judgment, holding that CBS had probable cause to sue Engel in the underlying action. The United States Circuit Court of Appeals for the Ninth Circuit, however, reversed this holding on appeal and determined that no probable cause existed to sue Engel (981 F2d 1076). The Circuit Court of Appeals also held that New York rather than California law applied in the case, and gave Engel the opportunity to amend his complaint to meet New York’s “heightened injury” requirement for malicious prosecution claims.
 

 The case was then transferred to Southern District of New York, which, after a thorough review of New York law, granted CBS’s motion for summary judgment. The court placed great reliance on the phrase “interference with person or property” and although special injuries, in its view, were not necessarily limited to provisional remedies, Engel’s claims of interference with an attorney-client relationship were not enough. After Engel’s appeal to the Second Circuit Court of Appeals, this Court accepted the certified question to provide some needed clarification of the special injury requirement under New York law.
 

 
 *201
 
 II.
 

 There is no doubt that a compelling argument can be made to consign the special injury requirement to the history books. The requirement had its genesis in England, and the original reasons for it do not predominate in this country. In England, a defendant need not worry about being saddled with the costs of a successful defense. The English rule is that generally the loser must pay the winner’s attorneys’ fees. Thus, an English plaintiff who brings a frivolous suit does so at the peril of paying his adversary’s litigation expenses
 
 (see generally,
 
 Wade,
 
 Frivolous Litigation: A Study of Tort Liability and Procedural Sanctions,
 
 14 Hofstra L Rev 433, 440-441; Mallor,
 
 Punitive Attorneys’ Fees for Abuses of the Judicial System,
 
 61 NC L Rev 613). It was only where an English defendant endured some special injury that the action for malicious prosecution was needed
 
 (see, Willard v Holmes, Booth & Haydens,
 
 142 NY 492, 495). Otherwise, the English defendant really did not suffer redressable harm.
 

 On this side of the Atlantic, the rule on fee allocation comes with no built-in disincentive to frivolous litigation. In American courts, each side must typically bear its own expenses. Perhaps as a result, the Second Restatement of Law of Torts finds no place for the special injury requirement (Restatement [Second] of Torts § 674). Moreover, scholars have generally been critical of the inclusion of the element of special injury in the law of malicious prosecution
 
 (see, e.g.,
 
 Wade,
 
 op. cit.,
 
 14 Hofstra L Rev, at 442; Birnbaum,
 
 Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,
 
 45 Fordham L Rev 1003, 1090; Cady,
 
 Curbing Litigation Abuse and Misuse: A Judicial Approach,
 
 36 Drake L Rev 483, 487; Note,
 
 Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?,
 
 26 Case W Res L Rev 653). Finally, a “slight majority” of jurisdictions in this country have no special injury requirement (Prosser and Keeton, Law of Torts, § 120, at 891 [5th ed];
 
 see, O’Toole v Franklin,
 
 279 Ore 513, 518-519, nn 3, 4, 569 P2d 561, 564, nn 3, 4;
 
 Friedman v Dozorc,
 
 412 Mich 1, 33-34, 312 NW2d 585, 596 [both adhering to minority view but compiling cases]).
 

 That said, however, it seems clear that New York law has deemed special injury to be a necessary consequence of a malicious prosecution. In this regard, the parties make much of footnote 2 in the case of
 
 Williams v Williams
 
 (23 NY2d 592, 596). It states: “Additionally, it might be noted that an action
 
 *202
 
 for malicious prosecution will not lie in this situation because there has been no interference with plaintiffs person or property”
 
 (id.,
 
 at 596, n 2).
 
 Williams,
 
 however, was not a malicious prosecution case. That case concerned abuse of process and libel. Engel contends that the dicta in
 
 Williams
 
 merely provides a toehold from which we cannot climb to the conclusion that New York requires proof of special injury, especially in light of the fact that the original reason for the heightened injury requirement did not fully transplant itself here from England.
 

 This argument, however, downplays cases from the turn of the century which strongly suggest the existence of such a requirement in New York law, and moreover, ignores more recent jurisprudence which cements its existence with sound reasoning and countervailing policy concerns. The
 
 Williams
 
 footnote cites to
 
 Burt v Smith
 
 (181 NY 1, 4). Although
 
 Burt
 
 concerned whether an underlying action to a malicious prosecution case , lacked probable cause, it noted that recovery may be limited “unless person or property is interfered with by some incidental remedy, such as arrest, attachment or injunction”
 
 (id.,
 
 at 5). The reason was that “public policy requires that all persons should freely resort to the courts for redress of wrongs, [and] the law protects them when they act in good faith and upon reasonable grounds”
 
 (id.).
 

 A case prior to
 
 Burt
 
 suggested another reason. In
 
 Ferguson v Arnow,
 
 the Court noted that malicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case would be dismissed (142 NY 580). To hold otherwise would mean that malicious prosecution cases “could be maintained for the unsuccessful prosecution of many of the actions which come upon appeal to this court, and a large proportion of unsuccessful actions could be followed by such an action, and litigation be thus interminably prolonged”
 
 (id.,
 
 at 584-585). Finally, in
 
 Willard v Holmes, Booth & Haydens (supra),
 
 the Court
 
 *203
 
 Our
 
 Williams
 
 footnote was thus grounded on precedent and the twin policy concerns of open access to the courts and avoiding “interminably prolonged” litigation. It was perhaps for these reasons that the footnote remained, over Chief Judge Fuld’s vigorous opposition in the
 
 Williams
 
 dissent
 
 (Williams v Williams, supra,
 
 23 NY2d, at 609-610 [Fuld, Ch. J., dissenting in part]).
 

 
 *202
 
 “assume [d] that there may be satisfactory authority for holding that where a party had been subjected to some special or added grievance, as by an interference with his [or her] person or property, in a civil action, brought without probable cause, [that party] may maintain a subsequent action to recover any legal damage” (142 NY, at 495 [citations omitted]).
 

 
 *203
 
 Nor have these concerns diminished in the intervening years. This Court, in fact, picked up the threads of our prior cases* weaving a basis for the determination that a claim of prima facie tort could not be used to avoid the “requirements we have set for traditional torts, such as malicious prosecution”
 
 (Curiano v Suozzi,
 
 63 NY2d 113, 118-119). Those requirements,
 
 Curiano
 
 held, as
 
 Burt
 
 and
 
 Ferguson
 
 suggested, were necessary to “effectuate the strong public policy of open access to the courts for all parties” and to avoid “ad infinitum [litigation] with each party claiming that the opponent’s previous action was malicious and meritless”
 
 (id.).
 
 Without extended discussion, then, we were able to require dismissal when special injury had not been pleaded, in support of a malicious prosecution claim
 
 (see, Belsky v Lowenthal,
 
 47 NY2d 820, 821;
 
 see also, Drago v Buonagurio,
 
 46 NY2d 778,
 
 revg
 
 61 AD2d 282).
 

 Moreover, the defendant who defeats a frivolous civil claim is not without some possibility of recovering legal expenses. The courts’ administrative rules permit many courts, in the exercise of discretion, to award fees and costs and to impose sanctions for frivolous conduct
 
 (see,
 
 22 NYCRR 130-1.1 — 130-1.5;
 
 see also, Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church v 198 Broadway,
 
 76 NY2d 411). Furthermore, if “an action to recover damages for personal injury, injury to property or wrongful death * * * is found * * * to be frivolous by the court, the court shall award to the successful party costs and reasonable attorney’s fees not exceeding ten thousand dollars” (CPLR 8303-a [a];
 
 see also,
 
 Fed Rules Civ Pro, rule 11 [c] [2] [providing that the court “may impose * * * an appropriate sanction,” which can include a “reasonable attorneys’ fee”];
 
 see generally,
 
 Wade,
 
 op. cit.,
 
 14 Hofstra L Rev 433). Such recourse, though in some cases not guaranteed, gives additional viability to the element of special injury as part of a claim of malicious prosecution.
 

 In declining to relieve plaintiffs of the added grievance requirement, we thus do no harm to the principle that appellate courts should not “atavistically cling * * * to distinctions which can have no practical significance but to interpose
 
 *204
 
 ancient formalities in the path of justice” (Hand,
 
 Deficiencies of Trials to Reach the Heart of the Matter,
 
 3 Lectures on Legal Topics, Assn Bar City of NY 89, 93 [1926]). Although its English reasons have dissipated here, they have not entirely disappeared and its justifications in American jurisprudence have continuing vitality. No mere ancient formalism, the concept of added grievance ensures that plaintiffs remain relatively free from the threat of retaliatory lawsuits in bringing their good faith claims. Financial burdens resulting from frivolous cases can, in some measure, be assuaged by awarding fees and costs as authorized by rule and statute. In addition, we cannot ignore the strong possibility that, absent the hurdle of an added grievance, successful defendants, seeking additional vindication for the burdens imposed by prior litigation, will claim malicious prosecution, and, if unsuccessful in that claim, their opponents will be all too willing to return the favor (see,
 
 Curiano v Suozzi, supra,
 
 63 NY2d, at 119).
 

 III.
 

 Dispelling rumors of the special injury requirement’s demise, however, does not resolve the question of what can amount to such an added grievance. In making this determination, we keep in mind that set against the great concerns of providing open access to courts and circumventing ad infinitum litigation is yet another concern, that the courts cannot be made forums for oppression and harassment
 
 (see, Burt v Smith, supra,
 
 181 NY, at 5).
 

 In striking the balance between these concerns, we also remain mindful of the role played by the other elements of a malicious prosecution claim. To succeed, the plaintiff must prove malice, or as the Restatement defines it, a purpose other than the adjudication of a claim, and must further prove an entire lack of probable cause in the prior proceeding (Restatement [Second] of Torts § 674;
 
 see, Burt v Smith, supra,
 
 at 5-6). This, as we have noted, is no easy feat
 
 (Ferguson v Arnow, supra).
 
 These other elements of a malicious prosecution claim thus work to alleviate the fear of retaliation in bringing novel suits as well as to block an endless series of malicious prosecution claims.
 

 Moreover, the current formulation of the special injury requirement contains anachronistic features. Gone are the days of the writ of
 
 ne exeat
 
 (let him not depart), which allowed a civil plaintiff the right to restrict the party sued in equity to the jurisdiction
 
 (see,
 
 Civil Rights Law § 23). More notably, ar
 
 *205
 
 rest as a general provisional remedy in a civil action was abolished in 1979
 
 (see,
 
 L 1979, ch 409, § 1, repealing CPLR 6101-6119;
 
 see also,
 
 Parson’s former NY Code of Civ Pro § 549 [June 1, 1893] [listing the many civil actions giving rights to arrest]). To limit the special injury standard in wrongful civil proceedings to “interference with person” in the sense of an arrest, provides a mold that the law would seldom fill. Empty standards do little to sustain important public policies.
 

 This leads naturally to the conclusion that burdens substantially equivalent to those imposed by provisional remedies are enough. Actual imposition of a provisional remedy need not occur, and a highly substantial and identifiable interference with person, property, or business will suffice
 
 (see, e.g., Groat v Town Bd.,
 
 73 AD2d 426). Since the role that the special injury requirement fulfills is that of a buffer to insure against retaliatory malicious prosecution claims and unending litigation, we are satisfied that a verifiable burden substantially equivalent to the provisional remedy effect can amount to special injury. Put another way, what is “special” about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. This standard strikes the balance required between discouraging excess litigation on the one hand and prohibiting the malicious use of the courts on the other.
 

 To the extent that this represents a departure from the case law, it is only a minor one, an incremental step in the right direction
 
 (see, Rooney v Tyson,
 
 91 NY2d 685, 693-694). As the Federal District Court was correct to acknowledge, New York has not strictly limited special injury to the imposition of provisional remedies, and the intermediate appellate courts have allowed such claims based on involuntary bankruptcy filings
 
 (Stokes v Kase,
 
 51 AD2d 983;
 
 Sachs v Weinstein,
 
 208 App Div 360), as well as prior mental illness proceedings
 
 (Reade v Halpin,
 
 193 App Div 566;
 
 see also, Groat v Town Bd., supra,
 
 73 AD2d, at 429-430,
 
 appeal dismissed
 
 50 NY2d 928;
 
 J.J. Theatres v V. R. O. K. Co.,
 
 96 NYS2d 271, 273). We now revisit the statement over a century ago in
 
 Willard
 
 that all that is required is some added grievance, for which the imposition of provisional remedies serves as but one of a more expansive set of examples
 
 (see, Willard v Holmes, Booth & Haydens, supra,
 
 142 NY, at 495).
 

 We likewise decline to carve out a special rule for attorneys, which the plaintiff and
 
 amicus
 
 suggest. No merit
 
 *206
 
 devolves to this area of law in departing from a general standard for all. We, of course, recognize the valuable role that attorneys play in the administration of justice and the necessity to be free from conflicts of interest that may impair the representation of clients. Failing extreme necessity, however, special standards for malicious prosecution claims brought by attorneys or other professional groups are unwarranted from a practical or a policy perspective. A malicious civil prosecution, then, is one that is begun in malice, without probable cause to believe it can succeed, and which, after imposing a grievance akin to the effect of a provisional remedy, finally ends in failure
 
 (see, Burt v Smith, supra,
 
 181 NY, at 5).
 

 The allegations of injury presented to this Court by the facts of the certified question, nonetheless, fall short of this standard. The question itself begs us to assume that an attorney-client relationship was “actually undermined,” but on the facts given to us, we cannot so conclude. In general, Engel complains about the burdens imposed by the conflict of interest created when CBS sued him. The amount of time and costs of rendering adequate counsel were increased, discovery burdens increased, some of which Engel did not or could not, according to the Second Circuit, charge to his client. These do not rise to the level of atypical consequences of a lawyer being sued. Avoiding conflicts and dealing with actual conflicts are part and parcel of the lawyer’s profession, and here, under the facts presented, Scholz agreed to continue notwithstanding the conflict and Engel prevailed. It is true that his burden was slightly increased but, as described, the burden did not form the critical mass necessary to be cognizable as special injury. The conflicts may have been virtually insurmountable, but the fact remains that Engel did surmount them, apparently without diminishing his client’s chances of ultimately prevailing.
 

 This does not mean that because Engel won for his client he cannot show the requisite added grievance. Nor should it suggest that Engel had to have been disbarred, disciplined, disqualified or dismissed in order to get his malicious prosecution claim to the jury. But here, nothing in the specific facts presented to us gives a basis for concluding that the burden, financial or otherwise, of strategizing around the conflict was substantially beyond that which would be typical of similar litigation.
 

 The claims in the facts presented to us of lost business likewise fail to muster the requisite special injury. These claims
 
 *207
 
 are actually tangential to the main claims of an increased work burden due to the conflicts, and are primarily asserted in general rather than specific terms. Even though we can foresee specific, verifiable loss of business providing the necessary grievance, the loss of one client along with vague allegations of reputational loss, given Engel’s established practice, are not sufficient. Moreover, there has been no allegation that the consequences, in terms of lost business, have marred, in any specific and meaningful way, Engel’s or his law firm’s financial opportunities.
 

 To be certain, CBS’s actions in bringing a groundless claim for the purposes of creating a conflict were reprehensible. Cases brought for the primary purpose of interfering with an attorney-client relationship or of curtailing another’s business opportunities not only waste precious judicial resources, but are also anathema to the justice system itself. Nonetheless, we are constrained by the fact that standards for awarding fees and costs and imposing sanctions are different than those for a claim of malicious prosecution. Under the facts of this certified question, the deleterious consequences strongly desired by CBS in bringing its action never materialized to the degree necessary to constitute special injury. As a result, we do not assume that the attorney-client relationship was “actually undermined” as the certified question suggests, and with this understanding, we answer the certified question in the negative.
 

 We note, however, that only the certified question and not the question of summary judgment is before this Court, and we offer no ultimate conclusion as to whether Engel has raised a question of fact to defeat summary judgment. We rely solely on the facts presented by the certified question. Other averred allegations or facts, not before this Court, may have a bearing on this determination. On certified questions, our province is bounded by “questions of New York law * * * which may be determinative” (22 NYCRR 500.17 [b]). We leave the final resolution of the summary judgment motion to the Second Circuit in light of the legal standard set forth in this opinion
 
 (see, Liriano v Hobart Corp.,
 
 92 NY2d 232, 236).
 

 Accordingly, construing the question as we do, the certified question should be answered in the negative.
 

 Judges Bellacosa, Smith, Levine and Wesley concur; Chief Judge Kaye and Judge Rosenblatt taking no part.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the
 
 *208
 
 question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.