INTERSHOE, INC. and Alberto Guarino, Plaintiffs,

v.

FILANTO S.P.A., Filanto Group S.A., Antonio Filograna, Antonio Sergio Filograna, and Annibale Viscomi, Defendants.

No. 00 CIV. 1168(KMW).

United States District Court, S.D. New York.

May 10, 2000.

472

Richard A. Martin, Santo F. Russo, Heller, Ehrman, White & McAuliffe, LLP, New York City, for Plaintiff.

George A. Zimmerman, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, for Defendant.

## OPINION & ORDER

KIMBA M. WOOD, District Judge.

Corporate plaintiff Intershoe, Inc. ("Intershoe") and individual plaintiff Alberto Guarino ("Guarino"), Intershoe's Chairman of the Board and a major shareholder, alleged in New York Supreme Court various state law claims arising from defendants' attempt to purchase Intershoe and a related lawsuit against Guarino. Defendants removed the action to federal court on the ground that there exists diversity of citizenship among the parties, notwithstanding the fact that Guarino and all defendants are aliens; defendants assert that the Court has subject matter jurisdiction because Guarino was fraudulently joined as a plaintiff in order to defeat diversity jurisdiction. Plaintiffs now move to remand the case to state court, and the Court grants the motion for the reasons stated below.

## I. *Background*

The following facts are alleged in plaintiffs' Complaint. Intershoe is a New York corporation engaged in the design, manufacture, and sale of high quality women's shoes. Guarino is a citizen and resident of Italy who, in addition to chairing Intershoe's board of directors, owned 45% of its stock during the period at issue. He and two other shareholders collectively owned 60% of Intershoe's stock and are known in this controversy as the "majority shareholders"; the remaining 40% was held by a group known as the "minority shareholders."

This dispute originates in defendant Annibale Viscomi's ("Viscomi") mid–1995 departure from his position as a financial consultant and accountant for Intershoe. Viscomi subsequently was engaged by defendants Antonio Filograna and Antonio Sergio Filograna, Italian residents who together control defendant Italian corporation Filanto S.p.A. (collectively "Filanto"), to help them acquire Intershoe. Toward this end, Viscomi provided Intershoe's confidential information to Filanto, which agreed to pay Viscomi $7 million to consummate the acquisition of Intershoe on Filanto's behalf.

In the course of late 1995 and early 1996, Viscomi made insistent attempts to convince Guarino to sell his shares in Intershoe. In the course of these overtures, Viscomi repeatedly threatened that he would cause trouble for Guarino if he refused to sell his shares. Viscomi also violated an agreement to keep confidential Guarino's one offer to sell his shares, falsely represented to the Filanto defendants that an agreement had been reached with Guarino, and failed to disclose to plaintiffs various draft contracts and letters of intent forwarded to Viscomi by Filanto. None of the majority shareholders ever did sell their shares, but in January 1996 Filanto formed defendant Filanto Group, S.A., a Luxembourg corporation, which entered into an agreement to purchase the minority shareholders' 40% interest in Intershoe.

When, despite Filanto Group's purchase of the 40% stake, the majority shareholders still refused to sell their shares, Filanto sued Guarino in New York Supreme Court, seeking to enjoin him from transferring his Intershoe shares to anyone but Filanto (the "Guarino Litigation"). Filanto and Viscomi falsely alleged that Viscomi had been acting as Guarino's agent in the negotiations concerning Intershoe and that Guarino, through Viscomi, had agreed to sell his shares to Filanto. Meanwhile, Filanto Group refused to make its scheduled payments to the minority shareholders, who then filed a second lawsuit (the "Pucci Litigation").

Terming the Guarino Litigation "meritless," Justice Crane denied the preliminary injunction because (1) there was no authorization for Viscomi to act as Guarino's agent, (2) there was no agreement to purchase Guarino's shares, (3) there was no writing in satisfaction of the Statute of Frauds, and (4) Filanto had unclean hands by virtue of its own secret agency agreement with Viscomi. Justice Gammerman later granted summary judgment for Guarino, noting that "Filanto was *in pari delicto* with Viscomi in his breach of fiduciary duty" to his alleged principal, Guarino.

Though legally unsuccessful at both the preliminary and final stages, the Guarino Litigation did force Intershoe to cancel a planned initial public offering (IPO) and unsettled its business. Indeed, plaintiffs allege that this was the lawsuit's sole purpose. Subsequently, the Pucci Litigation settled in an agreement by which Filanto Group consummated acquisition of the minority shareholders' 40% interest in Intershoe.

Plaintiffs now allege fraud, misappropriation of trade secrets, unfair competition, prima facie tort, and related causes of action. The essence of plaintiffs' claims is that defendants engaged in a fraudulent course of conduct designed to coerce Guar-

ino into selling his shares by, among other things, threatening and then commencing a frivolous, perjury-filled lawsuit that was costly both in its defense and in its indirect effects on Intershoe's business dealings. In order to secure defendants' only known assets in the United States, plaintiffs sought and Justice Gammerman granted a temporary restraining order (TRO) prohibiting Filanto Group from transferring its shares in Intershoe; before a hearing could be held on plaintiffs' motion for an order of attachment, defendants removed the action to this Court and stipulated to extension of the TRO.

## II. *Discussion*

### A. *Standard for Remand Based on Fraudulent Joinder*

■ As pleaded, this action may be heard only in state court. Removal to federal court is proper only when the action concerns a matter over which the federal district courts have original subject matter jurisdiction. *See* 28 U.S.C. § 1441. Here, there are no federal claims, and there are aliens on both sides of the case. Accordingly, there is neither federal question nor diversity jurisdiction. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir.1989) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction.") (quoting *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980)).[1]

■ An exception to these principles applies when a non-diverse party is "fraudulently joined" in order to defeat complete diversity. *See generally Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998). In such circumstances, the court will disregard parties "with no real connection with the controversy." *Id.* at 461; *accord Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 189–90, 44 S.Ct. 266, 68 L.Ed. 628 (1924). Although most frequently applied to the joinder of unnecessary defendants, the fraudulent joinder doctrine also requires the court to disregard the presence of a plaintiff who is not a "real party in interest." *Blakeman v. Conroy*, 512 F.Supp. 325, 327 (E.D.N.Y. 1981); *accord Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 521 F.Supp. 1046, 1047 (S.D.N.Y.1981).

■ Defendants seeking removal on fraudulent joinder grounds bear a "heavy burden." *Pampillonia*, 138 F.3d at 461. Fraudulent joinder must be shown by clear and convincing evidence, resolving "all factual and legal issues" in plaintiff's favor. *Id.* Defendants must show either "outright fraud" in the pleadings or that there is "no possibility, based on the pleadings" of stating a claim involving the non-diverse party. *Id.* Because this jurisdictional inquiry is preliminary to any decision on the merits, *see generally Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187–88 (2d Cir.1996), the federal court resolves any uncertainties in applicable state law in plaintiffs' favor and subjects the complaint to less searching scrutiny than on a motion to dismiss for failure to state a claim. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999); *cf. Nowak*, 81 F.3d at 1188 (distinguishing motions to dismiss for lack of subject matter jurisdiction from motions to dismiss for failure to state a claim in federal question cases).

### B. *Fraudulent Joinder of Guarino*

Guarino is far from the mere "nominal" plaintiff against whom the fraudulent join-

---

1. *International Shipping*'s extension of the "complete diversity" principle to aliens is unequivocal, but defendants suggest that a contrary rule applies when a plaintiff is a citizen of the forum state. Their authorities, however, rely on a statutory provision inapplicable here. This is not a suit between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," 28 U.S.C. § 1332(a)(3), because each defendant is an alien. *Cf. Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 496–98 (3d Cir.1997); *Bank of New York v. Bank of America*, 861 F.Supp. 225, 228–29 (S.D.N.Y.1994).

der doctrine is aimed, notwithstanding the alleged deficiencies in plaintiffs' legal theories. Guarino is the alleged victim of a fraudulent and malicious scheme to coerce him into selling his shares in Intershoe, a scheme that culminated in a lawsuit in which Guarino was named as the only defendant and which succeeded in, among other things, scuttling Intershoe's IPO. The Complaint alleges harms inflicted upon Guarino directly, not simply indirect injuries derived from his interest in Intershoe.

■ The defects in defendants' theory of fraudulent joinder are illustrated by analysis of plaintiffs' prima facie tort claims.[2] Both Intershoe and Guarino allege that defendants knowingly pursued a frivolous lawsuit against Guarino for the sole purpose of using the threat of harm to Intershoe and Guarino as leverage in their campaign to force Guarino to sell his shares.

■ Defendants contend that Guarino has been fraudulently joined on this claim. They argue that he has "no possibility" of stating a prima facie tort claim because under New York law a malicious, baseless prosecution cannot serve as the basis for a prima facie tort claim. *See generally Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). This argument fails for two reasons: (1) the alleged flaws in Guarino's claim are not the type of flaws that would lead to a conclusion that Guarino was fraudulently joined; (2) the alleged flaws arise at most from mislabeling of the cause of action, not

from inability to state a claim upon the facts pleaded in the Complaint.

■ First, defendants' attack on the legal sufficiency of the prima facie tort claim misconceives the appropriate inquiry into fraudulent joinder of a plaintiff. To show fraudulent joinder, defendants must show a flaw specific to the joinder of the non-diverse party, which is the jurisdictionally relevant aspect of the claim. Defendants, however, make no suggestion that only Intershoe, not Guarino, is the real party in interest to any claims arising out of the allegedly malicious character of the Guarino Litigation. *See Blakeman,* 512 F.Supp. at 327; *Saxe, Bacon & Bolan,* 521 F.Supp. at 1048. Rather, defendants claim that they did not violate a legal duty to *any* party. *Cf. Blakeman,* 512 F.Supp. at 327–28 (because only an estate's fiduciary may sue to protect estate assets, corporation was improper plaintiff in action to quash defendants' attempts to deprive estate of its interest in and control over corporation); *Saxe, Bacon & Bolan,* 521 F.Supp. at 1048 (because corporate shareholders have no standing to sue for injuries to the corporation, shareholders were improper plaintiffs in action challenging their corporation's exclusion from directory of law practices).[3] In these circumstances the proper remedy is to move to dismiss in state court, not to remove the action to federal court.

■ Second, there is ample possibility that Guarino states a claim based on the facts he pleads. As defendants point out,

---

2. If Guarino is a proper plaintiff as to one of plaintiffs' claims, removal cannot be premised on diversity jurisdiction. *See Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("[A] defendant cannot remove a case that contains some claims against 'diverse' defendants as long as there is one claim brought against a 'nondiverse' defendant."); *cf.* 28 U.S.C. § 1441(c) (allowing removal if (1) "separate and independent" removable and non-removable claims are joined, and (2) there is federal question jurisdiction over the removable claim). Accordingly, the Court need not con-

sider whether the standards for fraudulent joinder are met with regard to other claims.

3. Analogously, decisions considering fraudulent joinder of defendants have typically been concerned with determining *which* defendants are the proper targets of the claims in question, not whether any claim is stated at all. *See, e.g. Pampillonia,* 138 F.3d at 461–62 (corporate parent was improperly joined as defendant in suit against subsidiary); *Sonnenblick–Goldman Co. v. ITT Corp.,* 912 F.Supp. 85, 88–90 (S.D.N.Y.1996) (same).

a plea of prima facie tort may not be used to circumvent the requirements of another tort more narrowly tailored to the circumstances at hand. *See Curiano,* 480 N.Y.S.2d 466, 469 N.E.2d at 1327–28. Here, however, plaintiffs appear merely to have mislabeled as "prima facie tort" an otherwise adequate allegation of malicious prosecution.

■ Under New York law, a claim for malicious prosecution requires (1) initiation of litigation with malice, *i.e.* "a purpose other than the adjudication of a claim," (2) "an entire lack of probable cause in the prior proceeding," (3) special damages going beyond the "demands of defending a lawsuit" to encompass "a grievance akin to the effect of a provisional remedy," and (4) entry of judgment against the malicious plaintiff in the prior lawsuit. *Engel v. CBS, Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626, 631–32 (1999). According to the Complaint, defendants maliciously initiated a meritless lawsuit for the purpose of pressuring Guarino to sell his shares and preventing the alternative transaction of an Intershoe IPO. Although the state court refused to issue an injunction prohibiting any transfer of Guarino's shares and ultimately entered judgment in Guarino's favor, as a practical matter the litigation had an effect arguably akin to a provisional remedy by scuttling the IPO through the uncertainty created as to the ownership of Guarino's interest in Intershoe.[4]

This Court need not decide whether, as a matter of New York law, the Complaint does indeed state a claim for malicious prosecution, nor whether plaintiffs' ability to pursue this claim should be prejudiced by their failure to label it as such. For the purposes of establishing this Court's lack of jurisdiction to make precisely these determinations, it suffices that the Complaint colorably asserts such a claim and that New York's liberal pleading rules leave open the possibility that the state court would deem the Complaint to state a claim for malicious prosecution. *See, e.g. Curiano,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (dismissing prima facie tort claim but only after ascertaining that no claim for abuse of process or malicious prosecution could be stated). In any event, the fact that the lawsuit in question was brought against Guarino personally and sought to enjoin his disposition of his shares in Intershoe[5] makes it clear that Guarino is a proper party to assert such claims, not a nominal plaintiff fraudulently joined to manipulate the rules of diversity jurisdiction.

Because this analysis suffices to establish the absence of jurisdiction over this action, the Court declines to address the other alleged defects in the Complaint.

### C. Costs and Attorney's Fees

Although the Court grants plaintiffs' motion for remand, it denies their motion for an award of costs. Such an award lies in the Court's discretion. *See* 28 U.S.C. § 1447(c); *Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992). In light of the subtleties involved in applying fraudulent joinder principles to non-diverse plaintiffs in circumstances such as these, as well as the absence of any clear showing that plaintiffs have been prejudiced by the delays associated with removal, the parties should bear their own costs.

### III. Conclusion

For the reasons stated above, the Court grants plaintiffs' motion insofar as it seeks remand of this case to state court and

---

**4.** Drawing all inferences in plaintiffs' favor, the Court assumes that included in the IPO were transactions involving some or all of Guarino's shares.

**5.** Defendants suggest that the shares are actually owned by a corporation, not by Guarino

directly. Even were this distinction relevant here, the Complaint alleges that Guarino owns the shares directly, and the Court accepts its statement of the facts for the purposes of this motion.

denies the motion insofar as it seeks an award of costs. The Clerk of Court is directed to close this case. Any pending motions are moot, as is defendants' request for a conference in anticipation of its motion to strike portions of plaintiffs' counsel's affidavit in support of the present motion.

SO ORDERED.