(April 16, 2009)

In the Matter of 155 West 21st Street, LLC, et al., Respondents, v Alasdair McMullan, Appellant, et al., Respondent. [877 NYS2d 56]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered June 27, 2007, which to the extent appealed from, denied respondent-appellant's cross motion for sanctions, unanimously reversed, on the law and the facts, the motion

granted with sanctions to be imposed on petitioners-respondents and their counsel in the amount of $10,000 each, payable to the Commissioner of Taxation and Finance and the Lawyers' Fund for Client Protection, respectively, pursuant to 22 NYCRR 130-1.2 and in accordance with 22 NYCRR 130-1.3; and reasonable costs and attorneys' fees awarded to respondent Alasdair McMullan, payable by the above three entities in an amount to be determined on remand. The Clerk, Supreme Court, New York County, is directed to enter judgment accordingly.

In this proceeding brought pursuant to RPAPL 881, we are called upon to revisit the issue of sanctions and whether petitioners, by filing a petition in a lower court to seek the relief denied them by this Court, engaged in conduct frivolous enough to warrant the imposition of the maximum financial sanctions.

On May 10, 2006, respondent, Alasdair McMullan, who leased an apartment at 153 West 21st Street (153), commenced an action against petitioners, HRH Construction, LLC, and 155 West 21st Street, LLC (HRH/155), the project manager and owner of a property development located at the adjoining property, 155 West 21st Street (155), alleging negligence, trespass and harassment related to HRH/155's construction activities.

On May 11, 2006, McMullan moved for preliminary injunctive relief to prohibit HRH/155 from entering his property. In his affidavit in support of the motion, McMullan stated that he had been a lessee since November 2002 of the garden floor apartment located at 153, which he occupied with his girlfriend, Katrina Carden. The leased property included a garden area backyard surrounded by a metal chain link fence, as well as a wooden privacy fence. He stated that sometime in 2004, HRH/155 began construction work on the 155 property which was immediately adjacent to his apartment and backyard.

McMullan depicted egregious conduct by the construction company such as cutting down a tree in the 153 backyard; removing without permission the chain link and wooden fences around the backyard; littering the yard with equipment and debris; blocking a rear fire exit door to McMullan's apartment; and causing extensive flooding of his basement.

Meanwhile, on May 31, 2005, McMullan and HRH/155 had entered into an agreement permitting HRH/155 to use and occupy McMullan's backyard for limited construction purposes. The agreement provided, in pertinent part, that HRH/155 was to pay McMullan's full rent, retroactive to April 2005 until completion of the work, and HRH/155 was to return that area to substantially the condition it was in before the fence was knocked down.

On July 22, 2005, a backhoe allegedly tore a hole through the walls of McMullan's apartment, damaging cabinets in the apartment and injuring Carden. When Carden complained, she was told by HRH/155 project manager, Alex Papadopoulos, that "we have every legal right to go back there and take the fencing down."

McMullan alleged that subsequently several "significant breaches" of the rent agreement occurred, "in addition to destructive and potentially deadly tortious conduct." Despite settlement discussions with HRH's insurance carrier, these claims were never resolved. Further, HRH/155 failed to pay McMullan's rent pursuant to the agreement, and although discussions ensued, HRH/155 ultimately refused to pay the rent.

In opposition to McMullan's motion for a preliminary injunction, HRH/155 submitted the affidavit of HRH's project manager, Alex Papadopoulos, a named defendant in the underlying action and that of Kevin Lalezarian, the developer of the construction project ongoing at the 155 property. Lalezarian stated that HRH/155 was aware that McMullan objected to the access but HRH/155 did not know "whether he had any property interest in the garden or courtyard area (although he represented that he did)."

The motion court, on or about June 9, 2006, granted McMullan's motion for a preliminary injunction against HRH/155, without a hearing, and enjoined HRH/155 from entering onto the 153 property, which included the outdoor area, and from leaving debris and equipment on the subject premises. The court rejected HRH/155's argument that McMullan had no exclusive possessory rights to the garden and courtyard pointing to "the plain language of the lease and the physical layout of the premises, particularly prior to the 155 defendants' tearing down the fences." The court observed: "[t]he 155 defendants argue, in essence, that they were and are entitled—and plaintiffs have no basis to object—to trespass on the 153 property despite the admitted absence of a current agreement with plaintiffs or the 153 property owner, to tear down fences and trees and uproot plants, to block ingress or egress to plaintiffs' home, to leave debris in the garden and courtyard of one's neighbors, to otherwise engage in the conduct of which plaintiffs complain, and to remain on the 153 property for which they have no right to enter and not to leave until the police are called to intervene."

The court concluded that "defendants' cavalier attitude and disregard of plaintiffs' rights [gave] additional weight to plaintiffs' showing of the need for the injunction."

HRH/155 appealed the preliminary injunction; then moved

before this Court to vacate the injunction pending appeal. They did so on three grounds: (a) that the factual issue of McMullan's right to the garden area had not been resolved; (b) that RPAPL 881 provides adjoining property owners with the *right to a license* to make such repairs and improvements, and that, therefore the grant of a preliminary injunction in the face of such a right constitutes error; (c) that HRH/155 needed a vacatur of the preliminary injunction in order to file for the RPAPL temporary license. They assured this Court that they would file such a special proceeding within days of the vacatur of the preliminary injunction.

We were not swayed by either HRH/155's arguments or entreaties, and on July 13, 2006 denied the motion to vacate the preliminary injunction pending an expedited appeal (2006 NY Slip Op 71957[U]). Subsequently, in March 2007, we affirmed the motion court's grant of the preliminary injunction (38 AD3d 206 [2007]).

In April 2007, Supreme Court granted McMullan's and Carden's motion for summary judgment on their causes of action for trespass and breach of contract in their underlying action.

In the meantime, following the denial of interim relief by this Court, though prior to the determination of the appeal affirming the grant of the preliminary injunction, HRH/155 brought a special proceeding in Supreme Court pursuant to RPAPL 881 against McMullan and the 153 owner. Section 881 states that: "When an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made . . . without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter . . . Such license shall be granted by the court in an appropriate case upon such terms as justice requires."

McMullan cross-moved for dismissal of the RPAPL proceeding and the imposition of sanctions and costs against HRH/155. McMullan opposed the petition on grounds of collateral estoppel and argued for imposition of sanctions on the grounds that the commencement of the proceeding was frivolous and in violation of 22 NYCRR 130-1.1 (c) (1) and (3).

McMullan pointed out that in papers before this Court, HRH/ 155 had stated they would file for a temporary license after the preliminary injunction was lifted. He further described the filing of the special proceeding as "seek[ing] the interim relief denied to them by [this Court]."

In June 2007 Supreme Court denied the motion for the RPAPL 881 temporary license as against McMullan as academic because he was no longer the lessee at the subject premises, denied McMullan's request for imposition of sanctions and costs, and discontinued the action as against the 153 owner on the stipulation of the parties.

On appeal, McMullan argues that the court abused its discretion in denying his cross motion for sanctions. McMullan argues that the motion court failed to determine whether HRH/155's conduct was frivolous and failed to determine whether an award of costs would have been appropriate.

HRH/155 contend that the court did not abuse its discretion, that there was no frivolous conduct since the determination as to the preliminary injunction was not binding in the context of the RPAPL special proceeding, and that the license is for prospective access and cannot be based on allegations as to prior conduct.

For the reasons set forth below, this Court finds the motion court abused its discretion by failing to adjudicate the issue of frivolous conduct, which, to the extent outlined below, we find sanctionable since HRH/155's conduct was both meritless and evidently undertaken to harass McMullan and Carden. Thus, we award costs to respondent McMullan, and financial sanctions are imposed on HRH/155 up to the maximum amount permissible by law.

Pursuant to 22 NYCRR 130-1.1 (a), a court "in its discretion, may award to any party or attorney in any civil action or proceeding before the court . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct[,]" and, in "addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part" (*see also Engel v CBS, Inc.*, 93 NY2d 195, 203 [1999]; *Tag 380, LLC v Ronson*, 51 AD3d 471 [2008]; *Costantini v Costantini*, 44 AD3d 509 [2007]; *Intercontinental Bank Ltd. v Micale & Rivera*, 300 AD2d 207, 208 [2002]).

Frivolous conduct occurs when, as defined in subdivision (c) of 22 NYCRR 130-1.1: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (*see e.g. Intercontinental Bank Ltd.*, 300 AD2d at 208 [the making of "false asser-

tions of material facts" was frivolous]; *Nachbaur v American Tr. Ins. Co.*, 300 AD2d 74, 75 [2002], *lv dismissed* 99 NY2d 576 [2003], *cert denied* 538 US 987 [2003] [the bringing of "repetitive and meritless motions" constituted frivolous conduct]; *Premier Capital v Damon Realty Corp.*, 299 AD2d 158 [2002]).

In this case, we find that the petition as commenced was totally without merit in the law. On the contrary, it was conduct entirely in keeping with HRH/155's cavalier attitude demonstrated by their literal trampling of respondents' property and figurative trampling of respondents' property rights. Throughout the proceedings, HRH/155's obstinately argued that they were "entitled" to a license of access pursuant to RPAPL 881 and that it was their statutory right to be granted such a license. In fact, the right is the right *to seek* a license under certain circumstances. Nevertheless, relying on this erroneous interpretation of the law, HRH/155's attitude continued unabated.

As of July 13, 2006, the day they filed their petition, HRH/155's case was squarely before this Court; there was an expedited appeal pending on the preliminary injunction, and HRH/155 had been unequivocally denied the relief of vacating the preliminary injunction pending appeal by a full bench of this Court.

HRH/155 pressed forward regardless. In a move that was as inexplicable as it was ill-conceived, they filed their petition in Supreme Court by order to show cause, requesting a temporary license pursuant to RPAPL 881 to gain access to the 153 property *as well as seeking the vacatur of the preliminary injunction.* Counsel requested a court-ordered temporary licence for a period not to exceed 30 days to complete the project. Counsel suggested that during the license period, HRH/155 would provide a third-party security guard to prevent worker misbehavior and would pay a portion of McMullan's rent. Finally, counsel for HRH/155 stated that, for the purposes of the special proceeding, the court "can assume, as true, that McMullan has a possessory right to the garden/courtyard area."

HRH/155 repeated their erroneous assertion that because their improvements could not be accomplished without access, and permission was denied this "creates a statutory right to the license on such terms that are just."

The petition further stated that "[c]urrently pending before the Appellate Division is a motion to vacate the appeal [*sic*]." Meanwhile, an affidavit of counsel reflected that "[HRH/155] have appealed such decision" (of granting a preliminary injunction) of the court and have made an "expedited motion to vacate the preliminary injunction pending appeal." There was no mention anywhere that the expedited motion had been denied.

Arguably, the petition appears to have been drafted on July 11, 2006, two days prior to the full bench decision on the motion; it is also possible that HRH/155 filed the petition before noon of publication day, thus without being aware of the decision on the motion. Indeed at one point, HRH/155 explained that in filing the petition, they were endeavoring to accomplish both license and vacatur as "expeditiously as practicable." In other papers, they described it as a move to "avoid loss of time in the event of a vacatur of the preliminary injunction." This of course does not explain why they did not withdraw the petition upon being served with the decision and order of this Court specifically denying the relief, or why they maintained the action even after this Court affirmed the motion court's preliminary injunction on appeal.

Further, the record does not reflect that counsel informed the court of these developments. Indeed, that places counsel in direct contravention of 22 NYCRR 130-1.1a (a), which states that an attorney certifies to the accuracy of the contents of litigation papers by signing them. The papers are considered frivolous if they assert material factual statements that are false (*see* 22 NYCRR 130-1.1 [c] [3]). Furthermore, frivolous conduct is continued when its lack of factual basis becomes apparent (*see* 22 NYCRR 130-1.1 [c]; *see also* Connors, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29, Code of Professional Responsibility DR 4-101 [22 NYCRR 1200.19], 2009 Pocket Part). Hence, counsel had an ongoing obligation to alert the court to material changes in the factual position stated initially. In other words, counsel had the obligation to inform the court that an interim application for vacatur of the injunction pending appeal was no longer pending, but had been determined against the client, and after March 2007, had the obligation to inform the court of this Court's affirmance.

It is not necessary to consider HRH/155's argument that collateral estoppel does not apply because a preliminary injunction is not determined on the merits, or is not a final adjudication. Nor is there any merit to HRH/155's sly interjection, in parentheses, in their brief that "an interim order is always subject to review." Standing alone, such pronouncement may have some merit but not in this case where the interim order is made by an appellate court and the review is being thrust upon a lower court. Nor can HRH/155 argue, with any legal support or authority, that a license pursuant to RPAPL 881 is granted on different grounds from a preliminary injunction because a license grants prospective access while a preliminary injunction forbids access for prior conduct.

The simple fact is that this Court's determination to deny relief on July 13, 2006 was effectively an order of the Court to HRH/155 to stay out of the 153 backyard, while the special proceeding filed on the same day was a request to a different, and lower, court for a license that would allow defendants immediate access to the 153 backyard. Thus, any grant of the temporary license necessitated, as HRH/155 had conceded, a vacatur of the preliminary injunction.

RPAPL 881 states that a temporary license may be granted for access to an adjoining property where permission of the adjoining owner or lessee has been refused. The statute then contemplates court intervention in a dispute between adjoining property owners, not intervention by a lower court to override an appellate court's prohibition of access. As respondent asserted, this was the equivalent of a "supplemental appellate process" seeking the necessary vacatur of the injunction, as well as the subsequent granting of the license.

It is beyond comprehension how HRH/155 believed they could gain the relief they were seeking from a lower court. In March 2007, this Court upheld the motion court's characterization of HRH/155's conduct as a "cavalier attitude" towards plaintiffs' property rights. It further declined to convert the appeal into an RPAPL special proceeding, and specifically decried HRH/155's argument of entitlement to the license as "risible" (38 AD3d at 207). The Court emphasized that HRH/155: "utterly failed to justify their entry onto the backyard of the subject premises in connection with their construction work on the adjacent property, and repeated interference with plaintiffs' use and enjoyment of the premises by, inter alia, leaving thereon construction materials and debris, removing fences, obstructing an exit from plaintiffs' apartment and bolting closed the fire exit, for which they were issued a violation by the Department of Buildings, and causing damage to plaintiffs' apartment itself as well as the backyard" (38 AD3d at 206). The Court admonished HRH/155 for their "cavalier attitude and disregard of plaintiffs' rights" and noted that HRH/155's claim that "McMullan's lease does not include the backyard garden area borders on the frivolous" (id.). Finally, the Court held: "Defendants' argument raised for the first time on appeal, that plaintiffs' motion for a preliminary injunction should have been denied because of defendants' right to bring a special proceeding under RPAPL 881 for the issuance of a license to enter adjoining property, can only be construed as a request to convert the motion for an injunction into an RPAPL 881 proceeding. This we decline to do. In any event, defendants' utter failure to show facts making the entry

necessary would require denial of any such RPAPL application. Moreover, a license may be granted pursuant to RPAPL 881 'in an appropriate case upon such terms as justice requires.' Defendants' assertion on this appeal that they are 'entitle[d]' to a license under RPAPL is risible" (*id.* at 207 [citations omitted]).

At the very least, HRH/155's persistence in continuing an action that was legally futile from the beginning, but became particularly so after this Court's affirmance of the preliminary injunction in March 2007, must be construed simply as an action continued for the sole purpose of harassing the plaintiff. Concur—Gonzalez, P.J., Andrias, Saxe, Catterson and Acosta, JJ.