GAJARSA, Circuit Judge,
concurring-in-part and concurring-in-judgment.
In my judgment, the majority opinion is incomplete in some respects. Thus, although I generally agree with the opinion of the court, I write separately to clarify my reasoning on certain issues before us.
*523 I.
When this matter was last before this court, I dissented from the panel’s decision to certify certain questions to the Oregon Supreme Court. Klamath Irr. Dist. v. United States, 532 F.3d 1376, 1378-81 (Fed.Cir.2008) (Gajarsa, J., dissenting). Nevertheless, we now have the guidance of the Oregon Supreme Court, and it is binding upon us. See Engel v. CBS, Inc., 182 F.3d 124, 125-26 (2d Cir.1999); Grover v. Eli Lilly & Co., 33 F.3d 716, 719 (6th Cir.1994).
In its certification order, the panel identified three questions for certification to the Oregon Supreme Court:
1. Assuming that Klamath Basin water for the Klamath Reclamation Project “may be deemed to have been appropriated by the United States” pursuant to Oregon General Laws, Chapter 228, § 2 (1905), does that statute preclude irrigation districts and landowners from acquiring a beneficial or equitable property interest in the water right acquired by the United States?
2. In light of the statute, do the landowners who receive water from the Kla-math Basin Reclamation Project and put the water to beneficial use have a beneficial or equitable property interest appurtenant to their land in the water right acquired by the United States, and do the irrigation districts that receive water from the Klamath Basin Reclamation Project have a beneficial or equitable property interest in the water right acquired by the United States?
3. With respect to surface water rights where appropriation was initiated under Oregon law prior to February 24, 1909, and where such rights are not within any previously adjudicated area of the Klamath Basin, does Oregon State law recognize any property interest, whether legal or equitable, in the use of Klamath Basin water that is not subject to adjudication in the Klamath Basin Adjudication?
Klamath Irr. Dist. v. United States, 532 F.3d 1376, 1377-78 (Fed.Cir.2008). The Oregon Supreme Court unequivocally answered “no” to the first certified question, and “yes” to the third. Klamath Irr. Dist. v. United States, 348 Or. 15, 227 P.3d 1145, 1157, 1166 (2010) (“Certification Decision”).
The Oregon court’s answer to the second question, however, was not definitive. It began by making clear that “[bjenefical use is a necessary but not sufficient condition to acquire a beneficial or equitable property interest in a water right.” Certification Decision, 227 P.3d at 1160. The Oregon court then adopted the three factors considered in Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), as probative, as a matter of state law, of whether landowners have an equitable or beneficial property interest in a water right to which the United States holds legal title. Certification Decision, 227 P.3d at 1163. Discussing the first factor — whether the water right was appurtenant to the land — the Oregon court found that it was. Id. And discussing the second factor — the relationship that exists between the federal government and plaintiffs — the Oregon court found that “the United States holds the water right that it appropriated ... for the use and benefit of the landowners.” Id. at 1163-64. I have no objection to the majority’s decision on these two factors, and I join it.
The third factor adopted by the Oregon Supreme Court is “the contractual agreements between the United States and plaintiffs.” Id. at 1165. I agree with the majority that, on remand, the trial court should direct its attention to the third factor set forth by the Oregon court. Ma *524 jority Op. at 519. But I disagree with the majority’s assumption that an equitable water right has been created by the first two factors, and that the contractual agreements between plaintiffs and the government can only “have clarified, redefined, or altered” that preexisting property interest. Id. at 519-20; see also Certification Decision, 227 P.3d at 1165. Instead, I read the Certification Decision as making the creation of such an interest dependent upon the content of the agreements between the various plaintiffs and the government. See Certification Decision, 227 P.3d at 1165 (“[W]e are in no position to provide a definitive answer whether ... the various contractual agreements between the United States and plaintiffs support or defeat plaintiffs’ claim that they have an equitable or beneficial property interest-” (emphasis added)). I therefore believe that the Oregon court was neutral on this factor, but noted its dependency on the terms and conditions of the relevant agreements.
Regardless of how the third factor is analyzed, I agree fully with — and want to emphasize — the majority’s statement that the existence of any right must be determined on a case-by-case basis. Majority Op. at 519; see also Certification Decision, 227 P.3d at 1165-66. The effect of each contract, patent, or other document serving as the basis for plaintiffs’ claims must be analyzed in light of its internal content, as well as the law and regulations in effect at the time. See Hash v. United States, 403 F.3d 1308, 1315 (Fed.Cir.2005).
II.
In addition to the over-arching issue of equitable or beneficial water rights, plaintiffs Van Brimmer Ditch Company (“Van Brimmer”), Klamath Drainage District, and Klamath Hills District Improvement Company assert specific alternative sources of water rights. Appellants 2007 Br. at 45; see also Appellants 2007 Reply Br. at 22-23. Because these claims are squarely before us and their disposition depends only upon conclusions of law, I would reach the claims of these three plaintiffs.
A.
Resolution of the claims asserted by plaintiffs Klamath Drainage District and Klamath Hills District Improvement Company is straight-forward. These plaintiffs assert claims based on water right permits with priority dates of 1977 and 1983, respectively. J.A. 43414-17. In their briefing, plaintiffs repeatedly characterize the referenced documents as “water rights certificates ” granting them vested rights. 2007 Reply Br. at 23 (emphasis added). But these documents are identified as “permits” on their face. And the trial court, in addition to noting other defects associated with these claims[1], explicitly *525 found that the record contains “no evidence that Oregon has issued a [subsequent] water rights certificate.” Klamath Irr. Dist. v. United States, 67 Fed.Cl. 504, 539 n. 62 (2005) (emphasis added). Absent evidence of subsequent water right certificates, the permits provide “only an inchoate right that ... does not constitute a vested water right.” Fort Vannoy Irr. Dist. v. Water Res. Comm’n, 345 Or. 56, 188 P.3d 277, 290 (2008) (en banc). I would therefore hold that plaintiffs Klamath Drainage District and Klamath Hills Improvement Company lack any protected property interest based upon the documents in the record.
B.
Turning to the rights of Van Brimmer, plaintiffs argue that Van Brimmer “does possess a pre-1905 water right” and that a 1909 contract between Van Brimmer and the United States “relinquishes only Van Brimmer’s riparian rights in lower Kla-math Lake, not its appropriative rights.” 2007 Reply Br. at 22-23. Assuming, ar-guendo, that Van Brimmer did obtain a water right with a priority date earlier than that of the United States, I disagree with plaintiffs’ interpretation of the 1909 agreement.
We have the ability to interpret the language of the agreement, San Carlos Irrigation and Drainage District v. United States, 111 F.3d 1557, 1564 (Fed.Cir.1997), and we should do so. The 1909 agreement includes a contractual promise by the United States to deliver water, in consideration for which Van Brimmer
hereby waives and renounces to the use and benefit of the United States any and all of its riparian rights, in relation to the waters and shores of Lower Kla-math Lake appurtenant or incident to the lands now being irrigated by [Van Brimmer] ... and also waives and renounces any and all claims for damages consequent upon or arising from any change of the course or water level of the said Lower Klamath Lake....
J.A. 4270. I interpret this portion of the contract to constitute a quit-claim of Van Brimmer’s “riparian rights,” a position with which plaintiffs apparently agree. 2007 Reply Br. at 23. The question is what does the contract mean by “riparian rights”?
Prior to February 24, 1909, the State of Oregon applied both the riparian doctrine and the prior appropriation doctrine to the use of surface waters. Fort Vannoy Irr. Dist., 188 P.3d at 283-84 (citing Wells A. Hutchins, The Common-Law Riparian Doctrine in Oregon: Legislative and Judicial Modification, 36 Or. L.Rev. 193 (1957)); cf. Oregon General Laws, Chapter 216 (1909) (adopting prior appropriation doctrine). Given this historical context, I believe that the 1909 contract’s quit-claim of “riparian rights” is ambiguous, and I would remand for additional briefing of this specific issue.
III.
In conclusion, my view differs only by a limited degree with that of the majority. I agree that remand is appropriate, but my guidance would differ on certain aspects of the Certification Decision. I therefore concur with the majority in part, and I concur in the judgment.

. For example, the trial court noted that the Klamath Drainage District permit is for use during a period of time that appears to be outside the period when delivery was suspended in 2001. Klamath Irr. Dist. v. United States, 67 Fed.Cl. 504, 539 n. 62 (2005). The trial court also included the Klamath Drainage District and Klamath Hills District Improvement Company permits in a discussion of the availability of damages, id. at 539, an issue which I do not believe the parties have adequately considered. Assuming that plaintiffs do have an equitable or beneficial property interest in the waters to which the United States took title in 1905, plaintiffs’ interests are likely junior to the aboriginal fishing rights of amici Indian tribes. I also think it very likely that the water flow allocations associated with Indian fishing rights may be largely co-extensive with the flow allocations made by the United States in 2001. In any event, plaintiffs’ damages, if such damages exist, may not be calculable — or even ascertainable — prior to resolution of the state-level adjudication of Klamath Basin water rights.